PEOPLE, *for use of* WINKLE TERRA-COTTA CO., *v.* COTTERAL.

PUBLIC BUILDINGS—CONTRACTOR'S BOND—SUBCONTRACTORS.

    One who furnishes to a contractor, for an agreed sum, all the terra-cotta work used in the construction of a school building, preparing special molds for the same from the plans and specifications attached to and made a part of his contract, is a subcontractor, and not a material man, though he has nothing to do with setting the work in the building; and he cannot, therefore, maintain an action upon the contractor's bond, given under 3 How. Stat. § 8411*a*, for the protection of material men and laborers.

Error to Wayne; Frazer, J. Submitted November 18 1898. Decided December 13, 1898.

*Assumpsit* by the people of the State of Michigan, for the use and benefit of the Winkle Terra-Cotta Company, against Joseph W. Cotteral, Sr., and Joseph W. Cotteral, Jr., copartners, as principals, and Charles E. Bresler and John E. Calnon as sureties, upon a statutory bond. From a judgment for defendants on verdict directed by the court, plaintiff brings error. Affirmed.

*Warner, Codd & Warner*, for appellant.

*Elliott G. Stevenson*, for appellee Bresler.

MOORE, J.   In March, 1895, Cotteral & Co. contracted
to build the Central High School Building in Detroit.
The usual bond given in cases of contracts for the con-
struction of municipal buildings was given by Cotteral &
Co.   It is claimed the other defendants are sureties upon
the bond.   The plaintiff furnished the terra-cotta work in
the building under a contract made with Cotteral & Co.
The contractors failed before the building was completed.
The Terra-Cotta Company was not paid for the work
which had been furnished by it at the time of the failure,
and it brought this suit to recover upon the bond.   The
defenses were: *First*, that plaintiff was a subcontractor,
and not a material man; *second*, that plaintiff had granted
an extension of time of payment, which released the sure-
ties.   Charles E. Bresler claimed he never signed the
bond.   The circuit judge directed a verdict in favor of the
defendants, upon the grounds: *First*, that plaintiff was a
subcontractor; and, *second*, that an extension of the time
of payment had been granted, which released the sureties.

Cotteral & Co. took the contract for the entire construc-
tion.   The plans and specifications required the use of a
good deal of terra-cotta work.   Much of this was of an
ornamental character.   The arrangement made between
the plaintiff company and the contractors is shown by the
following correspondence:

"CINCINNATI, O., June 4, 1895.
"WINKLE TERRA-COTTA CO.,
"St. Louis, Mo.

"*Gentlemen:* We would like to receive from you your
best quotations on the ornamental terra cotta for the Detroit
Central High School, furnished and set complete in accord-
ance with the plans and specifications on file in our offices,
room 84, Home Bank Building, Detroit, Mich., and Bly-
myer Building, Cincinnati.   The plans and specifications
for this material have not been changed since the time of
the awarding of the work, but the architects will allow
you to furnish your own designs for the construction, pro-
vided they maintain the same exterior faces, and the work
will be guaranteed strong and secure.   We would also
like your price on the above material f. o. b. cars Detroit,

so that we may figure our own setting, should we think it to our interest.

"Respectfully,
"J. W. COTTERAL & Co."

"ST. LOUIS, MO., June 6, 1895.
"Messrs. J. W. COTTERAL & Co.,
"Cincinnati, Ohio.

"*Gentlemen:* We have at hand your favor of the 4th inst., regarding the job at Detroit, Mich. We have notified our representatives at Detroit to see your firm in person at Detroit. Messrs. Holmes, Strachan & Co. are at present representing us. We did not make price set in building, as we found, on a building of this kind, and the way the work runs, the masons could run the terra-cotta setting much cheaper than we could do it. Messrs. Holmes & Co. will see you at Detroit. We would like very much to do this work for you. We will give you the best of material, and get the work out in the very best shape; and our head draftsman understands terra-cotta construction thoroughly, and the men in the different departments are experienced hands.

"Very respectfully,
"THE WINKLE TERRA-COTTA COMPANY,
"JNO. G. HEWITT."

"ST. LOUIS, MO., Aug. 9, 1895.
"Messrs. J. W. COTTERAL & Co.,
"Cincinnati, Ohio.

"*Gentlemen:* Yours, with revised drawing of cornice as made by the architects for the Detroit High School Bldg., at hand. In reply, would say, if the work is made according to the plan just received, we will make and deliver the terra-cotta work on cars at Detroit, for the High School Bldg., for the sum of seventy-three hundred dollars ($7,300.00). We have gone over the work carefully. The changes made by architects help us little in making any saving in the work. We have cut the price as close as possible, and hope to receive your order. The bids we made as per our drawings will stand, and, if architects will accept the changes, we will do the work at the prices named.

"Very truly,
"THE WINKLE TERRA-COTTA CO.,
"JNO. G. HEWITT, Sec."

"Cincinnati, O., Aug. 14, 1895.
"Winkle Terra-Cotta Co.,
        "St. Louis, Mo.

"*Gentlemen:* We inclose you herewith our order for terra cotta for the Detroit High School Building, with the wish that you proceed as rapidly as possible with this work, and prepare details for the more important features that have not already been argued, so that same can be submitted to the architects for their approval. We have a letter from Messrs. Malcomson & Higginbotham, stating they would like to have the detail of the belt work sent to them, so that they can mark the exact height of same, for the purpose of having them work correctly with the brick courses. The belts will have to be reduced some in height from that shown on the scale drawings.

"Respectfully,
"J. W. Cotteral & Co."

"Cincinnati, O., Aug. 15, 1895.
"The Winkle Terra-Cotta Co.,
        "Chicago, Ill.

"*Gentlemen:* Agreeable to the conditions named herein, please enter our order for all of the terra cotta in connection with the exterior walls of the Detroit Central High School Building. Workmanship and material is to be strictly first-class, and subject to the approval and acceptance of the properly authorized authorities of the city of Detroit and ourselves. Workmanship and material is to be in accordance with the plans and specifications, and the general conditions thereto. Copy of said specifications are attached herewith. You are to make all of the details necessary for the correct execution of this work, and same are to be submitted to the architects of the building, and must receive their approval before you proceed with the work. The section of the gutter and cornices which form the trough of the gutter is to be made in one piece. Every section of terra cotta must be properly marked with number or letter cast on the section, and an erection diagram must be furnished us for all of the material, in which the location of each piece is to be shown by the numbering or lettering above referred to. This material is to be promptly manufactured, and must be shipped in the order required for the construction of the building; and the entire order must be shipped not later than October 15, 1895. For the furnishing of this material under the conditions named herein, delivered f. o. b. cars Detroit,

Michigan, in good order, we are to pay you the sum of seven thousand three hundred dollars ($7,300.00). Should you fail to furnish this material as specified herein, it shall be optional with us to purchase same in the open market, and charge any excess of cost in so doing to you. Your acceptance of this order will conclude this agreement between us.

"Respectfully,
"J. W. COTTERAL & CO."

"ST. LOUIS, Mo., Aug. 16, 1895.
"Messrs. J. W. COTTERAL & CO.,
"Cincinnati, Ohio.

"*Gentlemen:* We have your favor of the 15th, with order for the terra-cotta work for the Detroit High School Building, as per plans prepared by Messrs. Malcomson & Higginbotham, architects, price $7,300.00. Gutter must be in one piece, and made as per last tracing received. Your order reads as if we had the drawings, and could go to work at once on the job. Such is not the case, however, and we have wired you to please forward plans from Detroit. Hence it will take a few days beyond October 15th to complete the order. We will put job in hand at once, when plans received. Please send us sample color, if you have any, showing what shade is wanted, and oblige. Thanking you for the order,

"Yours truly,
"THE WINKLE TERRA-COTTA CO.,
"JNO. G. HEWITT, Secy."

The plaintiff company is located at St. Louis, Mo. Terra cotta is made of clay. It is shaped and formed by the use of molds. One of the members of the firm testified that special molds had to be prepared for all the work, while another member of the firm testified that one-fourth of the work could be shaped in the molds on hand, while the balance of the work must be shaped in molds especially prepared in order to comply with the designs of the architect. It is the claim of the plaintiff that as it simply manufactured the material, and had nothing to do with placing it in the building, it was a material man. It is conceded on its part that, if its contract required the material to be put into the structure, it would be a sub-

contractor, but it is claimed that, as it was not required to do this, it was a material man.

It has been repeatedly held that the bond required by section 8411$a$, 3 How. Stat., is for the protection of laborers and material men, and is not for the benefit of subcontractors. Many cases arise where it is difficult to decide whether one is a material man or a subcontractor. It is very clear that Cotteral & Co. could not themselves furnish the terra cotta for this building, nor could the plaintiff out of its stock of material. Without the plans and specifications, so far as they related to the terra-cotta work, which must control between the school board and the contractors, it would not be possible for any manufacturer to furnish material which would comply with the contract made by the constructors of the building. The plans and specifications of the architect were to be followed in the manufacture of the terra cotta. The plaintiff was to furnish all of the terra cotta that was to go in the entire building under the original contract. The plans and specifications were made a part of the contract, and the plaintiff was as much bound by them as was the principal contractor. If plaintiff's contention is true, it is to be protected as a material man, because, not being a resident of Detroit, it could not run the terra-cotta setting as cheaply as could a local contractor, and for that reason did not include the setting in its contract, while a local contractor, who included the terra-cotta setting, which would form but a small percentage of the cost, would not be protected, because he was a subcontractor. We think this distinction is too subtle. Almost the precise question was presented and settled in the case of *Avery* v. *Board of Sup'rs of Ionia Co.*, 71 Mich. 538. I cannot see how the cases can be distinguished. Cotteral & Co. took the contract to construct the entire building; the terra-cotta work to be done according to certain plans and specifications. The plans and designs called for original forms and ornamentations. The plaintiff made a contract under the contractor to create or make all of this special work

required in the building, and was to be paid, upon the completion of its contract, a lump sum of money. It is difficult to reach any other conclusion than that plaintiff was a subcontractor.

It will not be necessary to discuss any of the other questions.

Judgment is affirmed.

The other Justices concurred.