PEOPLE, *for use of* REYNOLDS, *v.* BANHAGEL.

1. PUBLIC WORKS—CONTRACTS—BONDS—SECURITY FOR MATERIAL-MEN—RELEASE OF SURETIES.

> The sureties on a bond given by a contractor for a public building to secure laborers and materialmen (sections 10743–10745, 3 Comp. Laws) are not released by the act of the public officers in paying the contractor faster than the contract provides.

2. SAME—RELEASE OF SURETIES—ESTOPPEL TO CLAIM.

> Where, after a disagreement between the contractor and the public officers, the sureties of the contractor effected an arrangement under which he continued in charge of the work, but did not handle the money, and the contractor and sureties joined in a writing addressed to the architect and officers setting forth the arrangement and waiving any and all conditions stipulated in the contract, and further agreeing " that said contract, plans and specifications and bonds hereinbefore referred to, are binding and of full force and effect, and shall so remain under any conditions or changes by us herein or heretofore authorized," the sureties were estopped, when sued on the bond for materials subsequently furnished, to claim that the arrangement released them as sureties, and that after it the contractor was no longer a contractor and that no material was thereafter purchased on his account.

3. SAME—PAYMENT—EVIDENCE—SUFFICIENCY.

> Documentary evidence and testimony examined, and *held*, that defendants' claim that relator had been fully paid is not sustained.

4. SAME—SUBCONTRACTORS—RIGHTS.

> Persons contracting with the contractor to furnish all interior trim and shop work required for a public building according to the plans and specifications made by the architect, including doors, windows, stairs, cornice, moldings, and the like, are subcontractors and not materialmen, and are therefore not entitled to recover upon the contractor's statutory bond.

Error to Ionia; Davis, J.  Submitted November 18, 1907.  (Docket No. 105.)  Decided January 31, 1908.

Debt by the people of the State of Michigan, for the use and benefit of Alpheus Reynolds, surviving partner of the firm of Nichols & Reynolds, against Edward Banhagel, principal, and Seymour B. Gorham and Levi Marshall, sureties, upon a statutory bond.  There was judgment for plaintiff on a verdict directed by the court, and defendants bring error.  Modified and affirmed.

*V. H. & L. W. Smith*, for appellants.

*H. C. Loveridge* and *R. A. & W. E. Hawley*, for appellee.

Edward Banhagel contracted, in writing, March 20, 1901, to build a school house for $9,900.  He gave the statutory[1] bond to protect materialmen and laborers, with defendants Gorham and Marshall as sureties.  Performance of the contract was entered upon.  In August, 1901, after making a demand upon the district officers for pay for some claimed extras, Banhagel threatened to discontinue his undertaking.  Notice of this came to defendant Gorham, who went from his home in Ionia to learn the nature of the difficulty.  An arrangement was made, by the terms of which the work was continued, but Ban-

---

[1]Sections 10743–10745, 3 Comp. Laws.—REPORTER.

hagel did not thereafter draw and disburse money. The money was paid into a bank to the credit of Wells Knapp, the school director, and he gave checks as required, and the architect Chapel assumed the general control of the work which was, however, carried on by Banhagel. The contract provided for payment of 85 per cent. of the contract price, upon estimates, as the work progressed, and of 15 per cent. when the work was completed and accepted. Under date October 10, 1901, Banhagel, Gorham, and Marshall joined in a writing, addressed to the architect and the school officers, reciting the making of the contract, the giving of the bond, the contract price of the building, the amount of the contract price unpaid, the necessity of using the unpaid money to complete the building, and requested that the architect draw orders on said unpaid money from time to time to pay for material and labor and waiving any and all conditions stipulated in the contract, plans and specifications, relating to the manner of estimating and allowing the contractor sums of money as the work progressed and the retention of 15 per cent. of the contract price, with the further stipulation:

" We further agree, that said contract, plans and specifications and bonds hereinbefore referred to, are binding and of full force and effect, and shall so remain under any conditions or changes by us herein or heretofore authorized."

Plaintiffs furnished materials which entered into the construction of the school house and as such materialmen and as assignees of Ball Brothers, who also claimed to be materialmen, they, in September, 1903, brought suit upon the bond. A bill of particulars of their respective demands was required and was furnished. With the plea, a notice was given in which the defense indicated is that all of the items in the bills of particulars for which defendant Banhagel was ever liable were paid for before the suit was begun; that on or about August 7, 1901, a new and different arrangement than the one evidenced by the con-

tract was made, by reason of which, and of the method of conducting the building operations thereafter, the sureties in said bond were released. Upon the trial, both parties offered evidence which was received, a verdict was directed by the court for the plaintiffs for the amount claimed by them, and the case is brought into this court with a record certified to contain all of the testimony and all exhibits introduced at the trial. Seventy-four errors are assigned, 64 of which are, according to the brief for appellants, relied upon.

OSTRANDER, J. (*after stating the facts*). We pass the objections made to receiving any evidence under the declaration and to receiving the bond and contract in evidence, as without merit. They are answered by an inspection of the declaration and by the undisputed evidence, to set out which would weary the reader without doing good. The contract and specifications were produced. The plan and the detail drawings appear to have been lost. The erection of the building in accordance with them is not a matter of dispute.

The matters deserving attention are three in number:

(1) Have the sureties been released?

(2) Has the claim of Nichols & Reynolds been paid?

(3) Were Ball Brothers subcontractors or materialmen?

1. Two facts are urged as ground for holding that the sureties are released. The first one is that the contractor was paid faster than the contract permitted. Counsel for appellants rely upon *Backus* v. *Archer*, 109 Mich. 666; *Simonson* v. *Grant*, 36 Minn. 439; *Stillman* v. *Wickham*, 106 Iowa, 597. In each of these cases, the bond was given to secure performance of the building contract, not to secure laborers and materialmen. Undoubtedly, a surety on a bond conditioned for the performance of a builder's written contract according to specifications may insist that he is not surety for the performance of a different contract or for performance according to other and

materially different specifications. So, too, if the contract provides for payments thereon at specified times or upon the proportional performance of the contract, and material advances are made by the owner to the principal in the bond without consent of the sureties. But the bond in question here is required by statute to be demanded and furnished. It runs to the people of the State. It is conditioned to pay, if the principal (contractor) does not, for the material and labor entering into the construction of the contract work. Its purpose would be defeated if by some alteration in the contract time or manner of paying the contractor the sureties could be released. *Conn* v. *State*, 125 Ind. 514; *Steffes* v. *Lemke*, 40 Minn. 27. It also appears that the contract is silent as to times of payment, the agreement being that payments should be made only upon estimates which are to be made *about* each 30 days. One, the last, estimate made before the August arrangement, was paid a week or so before the usual period. The estimate was, however, for work actually performed. There was no advancement of money to the contractor. The other (alleged) fact relied upon is that after the new arrangement of August, Banhagel was no longer the contractor and no material was thereafter purchased on his account. There is no such fact. Besides, the sureties have, by their conduct and the writing referred to, estopped themselves to set up such a fact. The contention made is therefore without foundation.

2. Has the claim of Nichols & Reynolds been paid? The notice given with the plea does not put this fact in issue. The language employed means, and was carefully used to mean, that the debts of Banhagel contracted before the making of the August arrangement, so called, were paid. It was contended at the hearing in this court that by inspection of a certain exhibit (check), known as Exhibit 29, it would conclusively appear, the remainder of the record being considered, that Nichols & Reynolds had, in fact, been paid. Because it does not appear that this exhibit, though printed in the record, was actually of-

fered and received in evidence, a motion was made on be-
half of appellants, in this court, to remand the record for
correction. The matter is a very simple one. In the bill
of particulars, certain credits are admitted. The exhibit
in question is a check for $238.21, indorsed by Nichols &
Reynolds, and bearing evidence of payment by the bank.
Counsel for appellants contend that this check, or the
amount of it, does not appear in the credits stated in the
bill of particulars and that as its amount added to the
credits appearing would make some $64.45 more than the
total of debits, therefore it is established that the plaintiffs
were overpaid. The balance of account for which Nichols
& Reynolds had judgment is $173.76. The date of the
check referred to is December 10, 1901, and it was paid
December 11, 1901. On December 11, 1901, Nichols &
Reynolds credit Banhagel's account, not $238.21, the
amount of this check, but $420.11. There is no testimony
tending to prove that the amount of this check was in
addition to the credit given on the day the check was paid
and no reason appears for supposing that it was not a part
of the credit given. We are obliged therefore to say that
payment is not proved and that upon the record as made
no question for the jury, upon this point, was made. In
addition to this, however, in opposition to the motion to
remand the record, made by counsel for appellants, coun-
sel for plaintiffs filed a counter-affidavit, together with a
canceled check for $181.90, drawn December 10, 1901, by
the school director, in favor of Nichols & Reynolds, bear-
ing their indorsement and the o. k. of Banhagel and
stamped by the bank, paid December 11, 1901. The
amount of these two checks is exactly $420.11, which is
the precise credit given plaintiffs, in the bill of particulars,
as of December 11, 1901. The checks are drawn upon
different banks. The check for $181.90 was not made an
exhibit at the trial. We do not treat it as a part of the
record in this case in this court. The facts are mentioned
as reason for denying the motion to remand, which we do,

and as calculated to satisfy counsel for appellants that their claim is, in fact, as it is in law, unfounded.

3. Ball Brothers contracted in writing to furnish all interior trim and shop work required for the school house according to plans and specifications made by the architect for the sum of $1,175, to be paid, $100 down, "85 per cent. of contract price of all work as it is furnished and delivered and accepted as aforesaid."

The price was divided in the contract as follows: All finishing, cornice, etc., for the sum of $650; all exterior finishing, cornice, etc., for the sum of $175; all window frames, door frames and sash for the sum of $350. By the terms of the contract between Banhagel and the school district, the supervising architect was given full power to reject all materials and workmanship not in full accordance with the plans, specifications and detail drawings. Ball Brothers do business at Coldwater, Michigan, and what they furnished was, and by the terms of the contract was to be, delivered f. o. b. Coldwater "so as not to delay any of the work." It appears by the testimony of Mr. Ball that they had a copy of the plans and specifications and in getting out the material had nothing else to go by. When the goods left their hands, they were not in condition to be put into the building without some further work. The material had to be fitted in place, and some of it, like molding, cut in proper lengths, the sash required fitting and glazing, the doors had to be fitted with hardware and hung. Door frames and casings were shipped in what is called a "knock-down" condition. There were five flights of stairs, consisting of oak steps and risers, with newel posts and railing and wainscoting, ready to be put in place, but requiring the work of carpenters in the building to fit each step and riser to place and to fit the railing and posts. Counsel for plaintiffs do not attempt to distinguish, and we shall not do so, such, if any, of the material furnished by Ball Brothers as was merchantable for any other place than the one intended to be filled by it in this building. Most

of it was made for the place intended for it in the plans and specifications, according to which it was designed and manufactured. It is probably true, and is suggested by counsel, that the principal contractor might have bought the precise materials, in the precise form in which they were furnished for the price agreed upon, and made no reference whatever to his contract or to the plans and specifications. But he did not do so. The responsibility for furnishing material in accordance with the contract was cast upon, and was assumed by, Ball Brothers, who were also to be paid in accordance with the terms of the principal contract. What they furnished was to suit the plans and specifications which were made the measure or test of the quality and fitness of whatever was furnished. This case is upon the facts materially different from the case of Van Bochove & Sons Manfg. Co., considered in the opinion in *Kerr-Murray Manfg. Co.* v. *Power Co.*, 124 Mich. 111, 114, as a reference to the record in that case will disclose. Upon the authority of *People, for use of Winkle Terra-Cotta Co.*, v. *Cotteral*, 119 Mich. 27, it must be held that Ball Brothers were subcontractors. It follows that the judgment below is excessive by the amount of Ball Brothers' claim, of which plaintiffs were the assignees. As the amount of this claim is certain, being $600 with interest at 5 per cent. from August 21, 1903, to the date of the verdict and judgment, there is no objection to affirming the judgment as to the demand of Nichols & Reynolds and reversing it as to the demand of Ball Brothers, and it is so ordered.

The appellants will recover the usual attorney's fee, in this court and one-half the taxable cost for the record and brief.

MONTGOMERY, HOOKER, CARPENTER, and McALVAY, JJ., concurred.