PEOPLE, *for use of* BUHL SONS CO., *v.* FINN.

1. MUNICIPAL CORPORATIONS — PUBLIC BUILDINGS AND IMPROVE-
    MENTS—STATUTORY BOND.

    Under an agreement with the principal contractor to furnish
      hardware trimmings in accordance with plans and specifica-
      tions of the original contract to construct a municipal fire
      station, a firm which furnished the hardware were not ma-
      terialmen but subcontractors, from whom a notice to the
      contractor and the board of fire commissioners was required
      as a condition precedent to an action on the statutory bond
      under Act No. 187, Pub. Acts 1905. *Avery* v. *Board of
      Sup'rs of Ionia Co.,* 71 Mich. 538 (39 N. W. 742).

2. SAME—CONSTRUCTION BOND—STATUTES.

    In an action based on the statute, and tried on the theory that
      a statutory bond had been given, the plaintiffs were not en-
      titled to recover on the theory that the bond had not been
      filed in accordance with the statute, and that they were
      thereby excused from complying with the law.

Error to Wayne; Donovan, J. Submitted October 14,
1909. (Docket No. 11.) Reargued January 10, 1910.
Decided September 27, 1910.

Assumpsit by the people of the State of Michigan, for
the use and benefit of Buhl Sons' Company, against John
Finn, principal, and John M. Spaulding and Michael
Finn, sureties, on a statutory bond. A judgment for
plaintiff on a verdict directed by the court is reviewed by
defendants on writ of error. Reversed, and judgment
entered for defendants.

*Frank C. Cook,* for appellants.

*Frederic T. Harward* and *Jefferson G. Thurber,* for
appellee.

McALVAY, J. Defendant John Finn was a building
contractor, who on August 16, 1906, entered into a con-

tract with the fire commission of the city of Detroit to build engine house No. 29, according to plans and specifications furnished by Donaldson & Meier, architects, and to their satisfaction, for the sum of $19,970.85. The other defendants were sureties upon a bond given by Finn as provided by Act No. 187, Pub. Acts of 1905, entitled:

" An act to insure the payment of subcontractors and wages earned and materials used in constructing, repairing or ornamenting public buildings and public works."

George Moynes was a subcontractor under Finn, under written contract, according to plans and specifications, to furnish the carpentry work, the builders' hardware, and to line some bins and stalls in this engine house. Buhl Sons Company contracted with Moynes by letter to furnish the hardware trimmings as per plans and specifications for $154.50, and did furnish the hardware trimmings accordingly. Pudrith & Candler examined the plans and specifications to ascertain what would be required of them in lining the stalls and feed bins, and then agreed with Moynes to do this work according to plans and specifications, and did so do it, for $147. Afterwards Moynes became bankrupt and did not complete his contract. Finn, the principal contractor, completed it at a cost of $456 more than the contract price with Moynes. Finn made his last payment to Moynes May 10, 1907. The bond sued upon was not given until August 23, 1907, after the contract was completed and Finn had received his final estimate from the architects, and presented it to the commission for his final payment. The secretary informed him that on account of these two claims the commission would not pay him until the statutory bond was furnished. Claimants did not give the notice in writing to the fire commission or to the contractor, required by section 2 of Act No. 187, Pub. Acts 1905. Contractor Finn first received knowledge of these claims from claimants' attorney on or about July 1, 1907. The trial resulted in a judg-

ment for the full amount claimed upon a verdict directed by the court. Defendants assign error upon the refusal to direct a verdict in their behalf as requested, and upon refusal to give certain requests.

The question in the case is whether plaintiff and his assignors were subcontractors or materialmen. The suit was upon the bond required by Act No. 187, Pub. Acts 1905, and the court, without in terms holding plaintiff and his assignors to be subcontractors, in effect so held, in determining that all the requirements of the statute as to notices had been complied with by plaintiff. If these parties were subcontractors, the court was in error. The notices required by this statute in case of subcontractors admittedly were not given, either to the fire commission or the principal contractor.

Plaintiff argues: *First*, that it was a materialman; and, *second*, that if the court should hold that it was a subcontractor, in view of the fact that no bond had been filed by defendants, the notices which were given were sufficient.

This last contention is not tenable under the declaration, which is upon this statute. Defendants pleaded the general issue, and the case was tried by both sides upon the theory that a statutory bond had been given.

In the case of *Avery* v. *Board of Sup'rs of Ionia Co.*, 71 Mich. 538 ( 39 N. W. 742 ), the principal question was whether plaintiff was a subcontractor or a materialman. At that time and at the time the cases which followed that decision arose, the statute did not insure the payment of subcontractors. The act under which the case at bar was brought extends its protection to subcontractors, as well as materialmen. In the *Avery Case, supra*, it was held that "one who takes under the original contract, and is to perform in accordance with the original contract," is a subcontractor. Approved and affirmed in *People, for use of Winkle Terra-Cotta Co.*, v. *Cotteral*, 119 Mich. 27 ( 77 N. W. 312 ). Later, in *People, for use of Davis*, v. *Campfield*, 150 Mich., at page 677 ( 114 N. W. 659)

the same question was before the court. Mr. Justice CARPENTER, speaking for the court, quotes the definition of a subcontractor from the *Avery Case*, and says:

"Under this definition, which we think correct, we determine whether a person furnishing material is a subcontractor  *  *  *  by this test, viz.: Has he agreed that the original contract shall be the standard by which the performance of his contract shall be judged? If he has, he is a subcontractor.  *  *  *  If he has not made that agreement, he is an ordinary materialman.  *  *  * Under this definition, and according to this test, a manufacturer who agrees to furnish doors and sashes for a building in accordance with the terms of the original contract is a subcontractor, while if he merely agrees to furnish them in accordance with certain measurements, he is a materialman."

The same rule was announced by this court in *People, for use of Reynolds*, v. *Banhagel*, 151 Mich., at page 46 *et seq.* (114 N. W. 669).

Plaintiff's proposition in writing to Moynes was:

"As per request we are pleased to quote you on Yale and Towne hardware trimmings for engine house No. 29 as per plans and specifications, at $150.50."

Plaintiff's assignors of part of its claim "went all over the plans and specifications prepared by Donaldson & Meier for this job," and from them ascertained what work would be required, and agreed to do the work according to such plans and specifications. These plans and specifications were a part of the original contract, which required the contractor to furnish material and articles in conformity therewith, under the direction and to the satisfaction of the architects. The case at bar must be controlled by the cases above cited. Both plaintiff and its assignors were subcontractors. They are classified as such by the contracts entered into by them. They insist that these articles were the ordinary trade goods upon their shelves and in stock, and were furnished as such. They might have done this; but it is not that which was done. These materials, articles, etc., they assumed to

furnish in accordance with the terms of the original contract, making that "the standard by which the performance of their contracts shall be judged."

This case is distinguishable from the case of *People, for use of Kuenzel,* v. *Construction Co.,* 159 Mich. 133 (123 N. W. 801), heard at the term of court when this case was first argued. In that case there was no proposition to manufacture certain concrete blocks according to plans and specifications. Plaintiffs made no agreement with reference to the original contract. They agreed at 22 cents apiece to furnish such number of blocks as should be required to be used in the construction of the sewer. The molds for the blocks were furnished by the construction company. The opinion states:

" * * * It is clear that plaintiffs were concerned only to manufacture blocks of proper material in the forms or molds which were furnished, to allow them to properly harden, and to deliver them on the line of the sewer. * * * We think that it is made clear in this case that plaintiffs never undertook to perform any part of the original contract with the city, however complete their knowledge of its requirements may have been."

The court distinguishes the case from the cases of *Avery* v. *Board of Sup'rs of Ionia Co., People, for use of Winkle Terra-Cotta Co.,* v. *Cotteral,* and *People, for use of Reynolds,* v. *Banhagal, supra.*

In the instant case plaintiffs and their assignors, by specific agreements, each for a lump sum, did undertake to perform, and did perform, certain parts of the original contract according to plans and specifications. In *People* v. *Campfield, supra,* the class of cases one of which actually arose in the *Kuenzel Case, supra,* was discussed and distinguished. The rule laid down is a reasonable one, and the only one which this court has been able to formulate applicable to all cases.

It follows that plaintiff cannot recover in this action. The requirements of the statute, relative to notices which subcontractors must give, were not followed. The judg-

ment is reversed, and, as there is no dispute as to the absence of these notices, no new trial is ordered.

A judgment for defendants will be entered in this court.

OSTRANDER, HOOKER, MOORE, BROOKE, BLAIR, and STONE, JJ., concurred.