PEOPLE, *for use of* TOWNER HARDWARE CO., *v.* MORRISON.

1. PRINCIPAL AND SURETY—STATUTORY BOND—NOTICE OF ALTERA-
   TIONS—WAIVER—RELEASE.

   A surety on a public school contractor's bond given in
   pursuance of 3 Comp. Laws 1915, § 14827, was not released
   by reason of a change in the hardware used involving
   a difference in cost of only $116, without the architect's
   written order, where the change was agreed upon by the
   parties to the building contract, and the bond contained a
   clause expressly waiving notice of such alterations.

2. MUNICIPAL CORPORATIONS — SUBCONTRACTOR — MATERIALMAN —
   NOTICE OF CLAIM—PRINCIPAL AND SURETY.

   A hardware company furnishing standard stock goods to
   the contractor on a public school building under its own
   specifications, differing in kind and quality from those
   specified by the architect, was not a subcontractor within
   the provisions of 3 Comp. Laws 1915, § 14827, but was a
   materialman, and therefore was not required to give notice
   of its claim as required by section 14828, in order to re-
   cover payment for same on the contractor's bond.

Error to Muskegon; Vanderwerp (John), J.   Sub-
mitted June 5, 1924.   (Docket No. 64.)   Decided
July 24, 1924.

Assumpsit by the people of the State of Michigan,
for the use and benefit of the Towner Hardware Com-
pany, against Alvin R. Morrison and the Ætna
Casualty & Surety Company on a statutory bond.
Judgment for plaintiff for less than amount claimed.
Plaintiff brings error.   Reversed.

*John G. Anderson,* for appellant.

*Travis, Merrick, Warner & Johnson,* for appellees.

STEERE, J.    In May, 1921, defendant Morrison, of Port Huron, contracted with the board of education at Grand Haven to construct a school building in that city, and gave bond to pay for all labor performed, material furnished, etc., in the construction of said building as required by section 14827, 3 Comp. Laws 1915, with defendant Ætna Casualty & Surety Company as his surety.    In compliance with his request the Towner Hardware Company, of Muskegon, submitted to Morrison, on May 10, 1921, an offer to supply the finishing hardware for said building for $1,325 according to the architect's specifications shown it by him.    Later the hardware company submitted to him an offer to fill that bill for $1,184, and at the same time made him an offer to supply the finishing hardware for the building "as per schedule inclosed herewith and as per plans," for $1,300.    This was for the Sargent, Bower-Barff (BB) trim of hardware, of wrought design differing in kind and quality from those scheduled in the architect's specifications. Morrison accepted the last offer and plaintiff furnished him that kind of finishing hardware, claimed to be of better quality and more appropriate for the building than the kind described in the architect's specifications.    It also furnished him for use in the building other items of hardware as he ordered them from time to time during progress of the construction, not all of which was used, some being returned and credit given him therefor, reducing that account to $474. He did not pay for any of the hardware furnished him by plaintiff and this action was brought against him and his surety to recover for the same.    Plaintiff failed to get service upon him and the surety company is the only defendant before the court.    The case was heard by the court without a jury.    The two grounds of defense urged were that plaintiff was not a material man, but a subcontractor, under the provisions of section 1, Act No. 187, Pub. Acts 1905 (3 Comp.

Laws 1915, § 14827), and could not recover against the surety because of failure to give notice thereof as required by section 2 of the act (3 Comp. Laws 1915, § 14828), and also because plaintiff was a party to alteration of the contract in substituting the Bower-Barff finishing hardware for that specified by the architect without the latter's written order.     During the trial it was conceded by defendant's counsel that as to the hardware furnished from time to time, for which the bill amounted to $474, plaintiff was a materialman.     The trial court found and held that plaintiff was a subcontractor in furnishing the bill of Bower-Barff hardware under its accepted offer of $1,300, and could not recover for it, but rendered judgment against defendant for the $474 bill, with interest.

Defendants' claim of release by change in the terms of the contract is not tenable.     The contract price for erection of the building was $177,475.     The bond was for $90,000.     The change in the kind and quality of finishing hardware was agreed upon by the parties to the building contract.     The difference between its cost and the lowest offer to furnish that specified by the architect was but $116.     The contractor's bond given in the case expressly provides that:

"The surety hereby waives whatever right it may have to be notified of any such alterations, modifications and additions which may hereafter be agreed upon by the parties to said contract, * * * and acknowledges itself to be bound for all such alterations, modifications and additions, as fully as though proper notice thereof had been given to it and it had consented thereto; provided always, that the total cost of such alterations (etc.), shall not exceed 10 per cent. of amount of contract over and above the contract price mentioned in said contract."

Plaintiff's most serious contention is against the trial court's ruling that it was not acting in the capacity of a materialman but as a subcontractor when furnishing the $1,300 worth of finishing hardware ordered

from it by Morrison for the building.   The written evidence upon that subject so far as material is as follows:

"October 19, 1921.

"Mr. A. R. MORRISON,

   "Grand Haven, Michigan.

"*Dear Sir:*   We are pleased to quote you on the finishing hardware for Grand Haven high school building at Grand Haven, Michigan, as per schedule inclosed herewith and as per plans for lump sum price of $1,300, f. o. b. Grand Haven, Michigan, goods to be marked for openings.   This figure is based on Sargent hardware TC design (wrought) in finishes as follows:"

(Here follows plaintiff's list or schedule of material and articles proposed to be furnished.)

"We would advise that our proposition of May 10th, on finishing hardware, as per architect's specifications, namely, lump sum price $1,325, has been refigured and our today's price on this proposition would be $1,184.   *   *   *

"Yours truly

   "TOWNER HARDWARE CO."

"Grand Haven, Mich., Oct. 19, 1921.

"TOWNER HARDWARE CO.,

   "Muskegon, Michigan.

"*Gentlemen:*   I hereby accept your proposal of this date to furnish the hardware for the new Grand Haven high school for the sum of $1,184 f. o. b. Grand Haven, provided the hardware as originally specified is used. If one of the other samples submitted by you is substituted by the school board the price to you will be as per your quotation on that sample.

"It is understood that your lump sum price includes all of the finished hardware required whether included in the schedule or not.

"All hardware except locks and fire exit bolts to be delivered within three weeks after date of order, the remainder in seven weeks from date of order.

"I will complete the order and delivery date after action is taken by the school board.

"Yours truly,

   "ALVIN R. MORRISON."

On October 28, 1921, Mr. Morrison wired the Towner Hardware Company as follows:

> "Grand Haven, Mich., Oct. 28, 1921.
> "TOWNER HARDWARE CO.,
>    "Muskegon, Mich.
> "Black hardware market TC design Bower-Barff will be used to Grand Haven high school your price thirteen hundred dollars complete.      Notify Sargent Company to hurry it through.
>                               "A. R. MORRISON."

In support of his contention that plaintiff was a materialman its counsel cites *Avery* v. *Board of Sup'rs of Ionia Co.,* 71 Mich. 538; *People, for use of Davis,* v. *Campfield,* 150 Mich. 675; *People, for use of Westover-Kamm Co.,* v. *Valley Mantel & Tile Co.,* 200 Mich. 554, while counsel for defendant cite to the contrary *People, for use of Davis,* v. *Campfield, supra; People, for use of Reynolds,* v. *Banhagel,* 151 Mich. 40; *People, for use of Buhl Sons Co.,* v. *Finn,* 162 Mich. 481.      Many more decisions on that subject are to be found in this and other jurisdictions where, as in the act under consideration, a legislative intent is indicated to differentiate between subcontractors and those performing labor or furnishing material and the facts have made it difficult to determine in which class a claimant falls.      Broadly speaking all parties helping a contractor to perform his contract by furnishing labor or material under an agreement with him are contractors as to him, and subcontractors as to the party from whom he took the contract.

Though analogous in purpose the act involved here is not a lien law.      It relates to public buildings only and provides for the protection by bond of subcontractors, materialmen and those working for wages in their construction, while our so-called general mechanics' lien laws provide for their protection by a lien on the property.      In neither act has the legislature directly assumed to define a subcontractor.      In

section 29 of the mechanics' lien law (3 Comp. Laws 1915, § 14824) "laborer" and "materialman" are defined as used in that act, the latter "to include all persons by whom any materials are furnished in or for building (etc.) * * * any house, building," etc., a definition which would seem to include any subcontractor who furnished any material in the performance of his contract.

Neither do the general definitions given by text writers on the subject clearly point out a dividing line between a materialman and subcontractor. Wilkinson on Mechanic's Liens, dealing with Michigan statutes, does not attempt to define them beyond what appears in the statute. Phillips on Mechanic's Liens (3d Ed.), § 44, states:

"A subcontractor is one who has entered into a contract, express or implied, for the performance of an act with a person who has already contracted for its performance."

To like effect it is said in Rockel on Mechanic's Liens, § 53:

"A subcontractor is defined as one who has entered into a contract, express or implied, for the performance of an act with the person who has already contracted for its performance; and the subcontract as 'a contract by one who has contracted for the performance of labor or service, with a third party for the whole or part performance of that labor or service.' "

In *Avery* v. *Board of Sup'rs of Ionia Co., supra,* plaintiff agreed with the contractor for the construction of a court house, to furnish the cut stone for the building according to the original plans and specifications, which he did. In holding him a subcontractor the court said:

"The subcontractor is an under contractor,—one who takes under the original contract, and is to perform in accordance with the original contract."

It was then pointed out in the opinion that plaintiff was to furnish, cut the stone as fast as needed, and not hinder or delay the workmen on the building in any manner, the plans and specifications were to be followed in cutting the stone, they were to be delivered, cut and fitted all ready for the stone setters, and "plaintiff's contract could not be interpreted or understood without having recourse to these plans.   He was compelled to look to these specifications to find out what his obligations were."   The definition given in that case is accepted as the proper test to determine whether a person furnishing material is a subcontractor in *People, for use of Davis,* v. *Campfield, supra,* cited by both parties.   The court there said:

"Has he agreed that the original contract shall be the standard by which the performance of his contract shall be judged?   If he has, he is a subcontractor and cannot recover on the statutory bond.   If he has not made that agreement, he is an ordinary materialman and can recover.   Under this definition, and according to this test, a manufacturer who agrees to furnish the doors and sashes for a building in accordance with the terms of the original contract is a subcontractor, while if he merely agrees to furnish them in accordance with certain measurements, he is a materialman."

In subsequent cases this court has on more than one occasion recognized the definition stated in the *Avery Case* as a proper one so far as it goes, but has not always found it easy of application where the facts hover close to the border line.

The two cases of *People, for use of Reynolds,* v. *Banhagel* and *People, for use of Buhl Sons Co.,* v. *Finn, supra,* cited by defendant, involved claims for finishing hardware, or interior trim, furnished by plaintiffs to contractors for construction of buildings. In the *Reynolds Case* the court held as subcontractors parties who, the record showed, had contracted in writing to furnish the interior trim and shopwork re-

quired for the building according to the architect's stipulations, plans and detailed drawings, and had "nothing else to go by." As grounds for the ruling it is said:

"Counsel for plaintiffs do not attempt to distinguish, and we shall not do so, such, if any, of the material furnished by Ball Brothers as was merchantable for any other place than the one intended to be filled by it in this building. Most of it was made for the place intended for it in the plans and specifications, according to which it was designed and manufactured. * * * What they furnished was to suit the plans and specifications which were made the measure or test of the quality and fitness of whatever was furnished."

The *Finn Case* involved an agreement with the principal contractor, by plaintiff's assignors, to supply the hardware trim for a municipal fire station. After going all over the architect's plans and specifications and ascertaining from them "what work would be required," they "agreed to do the work according to such plans and specification." The opinion gives no details as to what material was furnished or work done, beyond a reference to "lining stalls and feed bins," but holds them subcontractors in performing as they agreed "certain parts of the original contract according to plans and specifications."

The facts in the instant case are more nearly analogous to those found in *People, for use of Westover-Kamm Co.,* v. *Valley Mantel & Tile Co., supra,* in which the court said:

"It is true that some of them, at the time they made their bids in a lump sum for various materials which constituted their claims, had before them specifications and plans, but we do not think that this was sufficient to make them subcontractors, because it does not appear that they did agree to take under the original contract and perform according to its terms."

Here plaintiff did not agree to take under nor did it "perform in accordance with the original contract," did not see it nor know its terms beyond the plans and specifications shown it, but furnished under its own specifications goods in its line of trade which differed in kind and quality from those specified by the architect. It did not do or have done any work on the building, or in making or fitting the material it furnished for special use in it, but sold the contractor standard stock goods of the trade equally "merchant-able for any other place than the one intended to be filled by it in this building." In *Curlett* v. *Aaron,* 11 Del. 477, a lien case in which the distinction between contractors and materialmen was involved, the court defined the latter as generally understood to mean:

"Gentlemen in trade who do not follow the business of building, or contracting to build, homes for others, but who keep for sale the various materials and commodities which enter largely into the building and completion of them."

Only when one of those engaged in trade crosses that line and becomes an "under contractor," taking "under the original contract" and is "to perform in accordance with the original contract," does he cease to be a materialman and become a subcontractor. The facts in this case do not warrant so classifying plaintiff.

The judgment is reversed, with costs to plaintiff, and a new trial granted.

CLARK, C. J., and McDONALD, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.