PEOPLE, *for use of* McDONELL, *v.* FIDELITY & DEPOSIT CO. OF MARYLAND.

1. Contracts—Partial Performance of Nonapportionable Contract—Recovery Based on Quantum Meruit.

In an action on a contract for excavating and backfilling which plaintiffs failed to complete, where the contract was nonapportionable, the price fixed being an average price for the whole, plaintiffs' right to recover for the work done was on the *quantum meruit* rather than on the contract price.[1]

2. Same—Estimates—Payments Made Without Requiring Estimates—Question Raised Too Late.

Where payments were made to plaintiffs by defendants from time to time without estimates being made, as required by the contract, and defendants' refusal to make further payment was not based upon the fact that no estimates had been made, it is now too late for them to stand upon said requirement.[2]

3. Same—Trial—Instructions.

A requested instruction that, if plaintiffs, after receiving a payment, made no further request for payment but

[1]Building and Construction Contracts, 9 C. J. §§ 45, 158; Contracts, 13 C. J. § 528; [2]Id., 9 C. J. § 162.

removed their steam shovel with the statement that they would bring another, which they failed to do, and gave notice that they had quit, they would be liable to defendants for all damages, was properly refused, because it left out of consideration the large amount claimed by plaintiffs to be due, and gave no consideration to plaintiffs' claim of repeated efforts to obtain their pay.[3]

4. SAME—EVIDENCE—ADMISSIBILITY.

Evidence of an estimate given defendants by the city with which they had a contract covering the work being done by plaintiffs was improperly admitted, since it had nothing to do with the amount due plaintiffs.[4]

5. SAME—SUBCONTRACTOR DEFINED.

A subcontractor is one undertaking the performance of the whole or a part of an existing contract under which another, with whom he contracts, is obliged to perform some specified work, and agrees, not only to do the work, but to do it in accordance with the pre-existing agreement.[5]

6. SAME — PLAINTIFFS NOT SUBCONTRACTORS WHERE TERMS OF ORIGINAL CONTRACT NOT KNOWN TO THEM.

Where plaintiffs never knew the terms of the contract under which defendants had undertaken to do the work and never saw the plans or specifications until after they had quit the work, they cannot be said to be subcontractors, and must therefore plant their right to recover on the *quantum meruit.*[6]

7. SAME—COPARTNERSHIP—AFFIRMATIVE DEFENSES—NOTICE.

The defense that plaintiffs had executed the contract sued on as copartners, but had failed to file a certificate as required by 2 Comp. Laws 1915, § 6354, is an affirmative defense requiring notice, and, not having been pleaded, is not available.[7]

8. SAME—PRINCIPAL AND SURETY.

If the method of excavating employed by plaintiffs was under the direction of defendants, although it differed from that contemplated in the contract between the city and defendants, neither the latter nor their surety may be heard to complain.[8]

Error to Bay; Houghton (Samuel G.), J.    Sub-

[3]Trial, 38 Cyc. p. 1633; [4]Building and Construction Contracts, 9 C. J. § 216; [5]Id., 9 C. J. § 2; Subcontractor, 37 Cyc. p. 340; [6]Id., 9 C. J. § 2; [7]Partnership, 30 Cyc. p. 586 (Anno); [8]Building and Construction Contracts, 9 C. J. §§ 76, 197 (Anno).

mitted April 8, 1925. (Docket Nos. 25, 26.) Decided October 1, 1925.

Assumpsit by the people of the State of Michigan, for the use of Sylvester J. McDonell and Ernest McDonell, copartners as McDonell Brothers, against the Fidelity & Deposit Company of Maryland, surety, and Jacob L. Sparling, doing business as J. L. Sparling Company, principal, on a statutory bond. Judgment for plaintiffs. Defendants bring error. Reversed.

*Lewis J. Weadock,* for appellant surety.

*Kinnane & Leibrand,* for appellant principal.

*Pulver & Bush,* for appellees.

WIEST, J. September 18, 1922, J. L. Sparling, doing business as J. L. Sparling Company, contracted with the city of Bay City to construct substructures, in accordance with elaborate plans and specifications, for a filtration plant, and gave bond to pay subcontractors and materialmen with the Fidelity & Deposit Company of Maryland as surety. September 24, 1922, J. L. Sparling Company entered into the following contract with McDonell Brothers, plaintiffs herein:

"This agreement made this 24th day of September, 1922, by and between the J. L. Sparling Co., of Bay City, Mich., parties of the first part, and McDonell Bros., of Flint, Mich., parties of the second part.

"For the excavation and backfill on the new filter plant, Bay City, Mich.

"Parties of the second part agree to furnish all labor, tools and equipment for the removing of all earth on the excavation for the sum of 43 cents per cubic yard measured in the excavation and to do the backfilling at 35 cents per yard measured in place.

"All earth below the original ground levels that is excavated to be paid for as excavation, and all earth placed above the original ground elevations and within

the lines of backfill as per plans to be paid for as backfill.

"Parties of the second part agree to complete work in thirteen months after date.

"Parties of the first part agree to place no unnecessary obstructions in the way of the parties of the second part nor delay said parties in completing their work on time.

"This agreement deals with steam shovel excavation only and ruff grading on backfill.

"Parties of the first part agree to keep all water pumped from excavation so it will not delay the progress of steam shovel.

"Parties of the second part to be paid every two weeks on estimates of work done the previous two weeks on backfill and excavation; final estimate to be paid within two weeks after work is completed.

"THE J. L. SPARLING CO.,

By J. L. Sparling.

"McDONELL BROS.,

By S. J. McDonell."

All payments made under this contract were without estimates.    In July, 1923, plaintiffs quit work, claiming Sparling Company breached the contract by not paying for work done, brought this suit to recover, and did recover the contract price for work performed. Sparling Company gave notice of recoupment, claiming the contract was breached by plaintiffs.    The surety company claimed plaintiffs were not subcontractors, had no consent from the city, did not contract to perform according to the obligation assumed by Sparling Company, and the city voluntarily overpaid Sparling Company.    Plaintiffs had judgment for $9,804.23.    Defendants prosecute writs of error severally.    The jury found Sparling Company breached the contract in not paying for work done, and this finding eliminated all recoupment asserted by Sparling Company.

We do not find it necessary to consider all of the 51 errors assigned by the Sparling Company and the

10 errors assigned by the surety company, for the judgment must be reversed and, if tried again, it will be on entirely different issues as to rights and remedies of the parties.

The contract between plaintiffs and Sparling Company was nonapportionable, and the court was in error in permitting recovery on the sole basis of the contract price for excavating and backfilling done. Sparling Company claimed the price per yard, fixed by the contract, was an average price for the whole, and the expensive portion of the excavating and backfilling was left undone. The question is ruled by *Adams* v. *Healy*, 227 Mich. 159.

It is insisted the contract provision, requiring estimates of work done, was a prerequisite to right to be paid, and if no estimate was requested or sought by plaintiffs before quitting the job there was no default on the part of Sparling Company in making payments that would justify plaintiffs in abandoning the contract. This question is not of much importance if plaintiffs were not subcontractors, and we need only say it is now too late for Sparling Company to stand upon this requirement, for payments were made from time to time without estimates, and the failure to pay was not because no estimate had been made.

Plaintiffs quit July 14, 1923. July 12, 1923, Sparling Company paid them $300. The court refused to instruct the jury that if plaintiffs made no further request for payment but removed their steam shovel, stating they would bring another shovel to go on with the work, and failed to do so without further notice to Sparling Company, except notice they had quit, then there was a breach of the contract by plaintiffs, and they would be liable to Sparling Company for all damages. This request was properly refused; it left out of consideration the large amount

claimed by plaintiffs to be due, and gave no consideration to the claim of plaintiffs of repeated efforts to obtain their pay.

It is claimed there was error in admitting evidence of an estimate given Sparling Company by the city in November, 1922, under which was obtained payment from the city in excess of work performed. We think this whole matter should have been kept out of the case, as it had nothing to do with the amount due plaintiffs for work and labor.

The surety company insists plaintiffs were not subcontractors. The statute (3 Comp. Laws 1915, § 14827) required Sparling Company to give bond "for the payment by the contractor of all subcontractors and for the payment for all labor performed and materials furnished." Such bond was given. This statute protects subcontractors, but leaves determination of who are such to judicial definition. Judicial definition rests upon facts disclosed and governing rules applied thereto. Certain governing rules were formulated by this court at a time when the statute afforded no protection to subcontractors, and the good sense thereof did not depart when the statute was amended to protect subcontractors. The question of what constitutes one a subcontractor has been before this court many times, and there runs through all the cases the idea that a subcontractor is one undertaking the performance of the whole or a part of an existing contract under which another, with whom he contracts, is obligated to perform some specified work, and agrees, not only to do the work, but to do it in accordance with the pre-existing agreement of which he must, in the very nature of undertaking the performance of the undertaking of another, have knowledge of its terms and provisions. There must be brought into the subcontract, by reference at least, the agreement that the original contract shall be the

standard by which the performance of the subcontract shall be judged. *People, for use of Westover-Kamm Co.,* v. *Valley Mantel & Tile Co.,* 200 Mich. 555. To be a subcontractor one must become an under contractor, taking under the original contract and agreeing to perform in accordance therewith. *People, for use of Towner Hardware Co.,* v. *Morrison,* 228 Mich. 216. Tested by these well established rules, plaintiffs were not subcontractors. They admit they never knew the terms of the original contract, never saw the plans or specifications until after they quit the work, and had no more knowledge of what was to be done by Sparling Company than was afforded by a topographical map and verbal information given by Mr. Sparling and engineers on the job. Plaintiffs must plant their right to recover on the *quantum meruit.* The only reference in plaintiffs' contract to plans related to backfilling and was not such as to make performance of such contract dependent upon the terms of the original contract.

The surety company moved for a directed verdict on the ground that "the contract sued upon was executed by plaintiffs as copartners, and it did not appear that the certificate required under section 6354, 2 Comp. Laws 1915, had been filed." This was an affirmative defense requiring notice. No such defense was pleaded. The court was right. *Turnbull* v. *Railroad Co.,* 183 Mich. 213.

There remains but one question more likely to arise in another trial. In the contract between Sparling Company and the city the pay lines for excavating and backfilling were designated, and Sparling Company was to bear the expense of placing sheet piling, shoring, bracing or support necessary to maintain the earth banks. Plaintiffs excavated beyond the pay lines, claiming to have done so by direction of Mr. Sparling who claimed it was cheaper to cut the

earth banks on a slope than to shore them up.    If it be found the method employed was by direction of Sparling Company, and cheaper than placing sheet piling, shoring or bracing, then Sparling Company cannot be heard to complain, and the surety company has no cause for complaint.    This is said for the purpose of its bearing, not upon plaintiffs' right to recover the contract price, but only upon their right, if any, to recover on the *quantum meruit*.

For the errors pointed out the judgment is reversed, with costs to defendants.

MCDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred.