GEORGIA-PACIFIC CORPORATION v CENTRAL PARK NORTH CO

1. MECHANICS' LIENS—MATERIAL—NOTICE OF INTENT—TIME.

A materialman must, within 90 days of the first delivery of materials, serve upon the owners of a building, if he is not dealing directly with them, a notice of intent to claim a lien before he has a right of lien (MCLA 570.1).

2. MECHANICS' LIENS—MATERIAL—SEPARATE CONTRACTS—SEPARATE LIENS.

A finding that a materialman had separate contracts for each of six separate structures comprising defendants' apartment complex and had valid liens on two of the structures because of his timely filing of notice of intent to claim liens constituted reversible error, where the structures were built on contiguous lots, interconnected by underground tunnels and served by a central heating and cooling system; the existence of these factors made it clear that the contract called for the sale of materials to a single project and not to six separate projects.

3. CONTRACTS—SUBCONTRACTOR—DEFINITION.

A party claiming to be a subcontractor must have agreed to perform according to the terms of the original contract, of which he must have knowledge and to which he agrees to be bound.

4. MECHANICS' LIENS—CONTRACTS—SUBCONTRACTOR—GUARANTOR.

A third-party defendant's agreement to pay the bills of a subcontractor supplying materials to defendant's apartment house complex made the third party a guarantor, not a subcontractor, where no evidence existed to show that the third-party defendant had agreed to perform under the original contract or had knowledge of its terms; therefore, the third-party defendant stood in the shoes of the subcontractor whose mechanic's lien

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur 2d, Mechanics' Liens § 174.

[2] 53 Am Jur 2d, Mechanics' Liens §§ 254, 258, 259.

[3] 53 Am Jur 2d, Mechanics' Liens § 151.

[4] 53 Am Jur 2d, Mechanics' Liens §§ 174, 328, 329.

was void because of failure to file his intent to claim a lien within the prescribed statutory period (MCLA 570.1).

Appeal from Wayne, Thomas J. Foley, J. Submitted Division 1 June 8, 1972, at Detroit. (Docket Nos. 11930–11933.) Decided October 25, 1972. Leave to appeal granted, 389 Mich 790.

Complaints by Georgia-Pacific Corporation, Bestwall Gypsum Division, assignee of Bob Ryan, Inc., against Central Park North Company, American Casualty Company, Hollenbeck Drywall, Inc., and Hollenbeck & Sather, Inc., for foreclosure of two mechanics' liens. Judgment for plaintiff. Defendants appeal. Reversed in part; affirmed in part.

*Wells, Wilmoth, Keating & Nitz, P. C.,* for plaintiff.

*Schmier, Schmier & Dakmak,* for defendants Central Park North Co. and American Casualty Company.

*O'Hara & Pierce,* for defendant Hollenbeck & Sather, Inc.

Before: J. H. GILLIS, P. J., and McGREGOR and BORRADAILE,* JJ.

J. H. GILLIS, P. J. This case involves the foreclosure of two mechanics' liens by the plaintiff on two buildings owned by the defendant, Central Park North Co. Due to the number of parties involved and the importance of their relationships, we find it necessary to recite the facts at greater length than usual.

On August 10, 1964, the defendant, Central Park North, entered into a contract with Hamilton Construction Company for the construction of an

* Probate judge, sitting on the Court of Appeals by assignment.

apartment complex. The complex was to consist of six buildings.

After this original contract had been executed, the plaintiff's assignor, Bob Ryan, Inc., contacted the Hamilton Construction Company. Mr. Ryan had worked for the plaintiff and was in the process of forming Bob Ryan, Inc., which was to operate as a supplier and distributor of building materials, including those manufactured by the plaintiff. The reason for contacting Hamilton Construction Company was to request that they purchase their interior wall materials from Hollenbeck Drywall. Bob Ryan, Inc., in turn, was to supply the materials to Hollenbeck Drywall. This resulted in Hamilton Construction Company entering into a subcontract with Hollenbeck Construction Company.

Hollenbeck Drywall commenced work in May of 1965, and Ryan began furnishing materials. The first delivery made by Ryan was on May 26, 1965, and was delivered to building #5.

The first deliveries to buildings #1 and #2, the buildings involved in this litigation, were on July 12, 1965, to building #1 and September 9, 1965, for building #2. As payment, Ryan received promissory notes from Hollenbeck Drywall which he assigned to Georgia-Pacific Corporation. In July of 1965, Georgia-Pacific notified Ryan that he should protect himself, in the future, by filing a mechanic's lien. Ryan served notices of intent to claim a lien on the owner, Central Park North. One of the notices covered building #1 and the other covered building #2.

On October 14, 1965, Hamilton Construction Company, at the insistence of Ryan, issued a check payable to Hollenbeck Drywall and Bob Ryan, Inc., which check was negotiated by the sole endorsement of Hollenbeck Drywall.

In November of 1965, Hollenbeck Drywall began having financial difficulties. Norman Hollenbeck, who was owner of Hollenbeck & Sather and the brother of the owner of Hollenbeck Drywall, contacted Ryan to work out an agreement by which Hollenbeck Drywall could continue doing business. An agreement was reached by which Hollenbeck & Sather guaranteed payment of the bills of Hollenbeck Drywall and Ryan would continue to sell materials to Hollenbeck Drywall.

The plaintiffs instituted suit to foreclose their liens on buildings #1 and #2. Hollenbeck & Sather claimed they also had an independent mechanic's lien, which had been filed, due to the fact that they were subcontractors. The trial court found that the plaintiff did have separate contracts, with respect to buildings #1 and #2, and found that they had created valid liens on these buildings. The court also found there was only an assignment or guarantee of the Hollenbeck Drywall contract by Hollenbeck & Sather and that the liens were void due to the failure to give timely notice of its intent to claim a lien.

Although separate appeals were filed by Central Park North and Hollenbeck & Sather, they have been consolidated by this Court and will be dealt with in this opinion.

The first issue raised by Central Park North is whether the trial court erred in finding there were separate contracts for each structure which comprised the entire complex.

MCLA 570.1; MSA 26.281, provides that before a materialman has a right of lien, if he is not dealing directly with the owner, he must, within 90 days of the first delivery, serve upon the owners a notice of intent to claim a lien. If there was a single contract on the entire project, the first

delivery date would have been May 26, 1965, and since the notice was not filed until October 1965, the 90-day period would have passed and the lien would be void. However, if there were separate contracts with respect to each building, the result would be reversed since the notice was filed within 90 days of the first deliveries to buildings #1 and #2.

In this case, the contracts which existed between Bob Ryan, Inc., and Hollenbeck Drywall consisted of approximately 38 invoices which described the type of materials purchased and the particular building to which they were to be delivered. This seems to support the plaintiff's contention that separate contracts were intended for each structure.

However, certain other facts must be highlighted in order to resolve this issue. The basic contract called for the construction of six buildings as a single project. Bob Ryan went to Hamilton Construction Company and suggested that they subcontract the interior wall work to Hollenbeck because Ryan would get the contract. Furthermore, Ryan in fact supplied 90% of the wall materials to the project.

This problem is not entirely foreign to the courts of this State. In *Union Trust Co v Casserly,* 127 Mich 183, 185 (1901), the rule was stated as follows:

"It is contended that the testimony shows that the contract was for the delivery of a specific amount of material, and that the delivery of other items was under separate contracts, and that therefore a lien should have been filed within 60 days after the furnishing of each item. * * * We think this too narrow a construction of the statute. The correct rule is stated in Phil. Mech. Liens, § 229, as follows:

" 'Where work or material is done or furnished, all going to the same general purpose, as the building of a house or any of its parts, though such work be done or ordered at different times, yet if the several parts form an entire whole, or are so connected together as to show that the parties had it in contemplation that the whole should form but one, and not distinct, matters of settlement, the whole account must be treated as a unit, or as being but a single contract.' "

This rule has continued to be the law of this state. *Sandusky Grain Co v Borden's Condensed Milk Co,* 214 Mich 306 (1921); *David Lupton's Sons Co v Berghoff Printing Co,* 249 Mich 455 (1930).

Under the circumstances in the instant case, we find the above-stated rule of law to be controlling. Although the invoices were separate, the materials were sent and applied to the same project.

The fact that there were six separate buildings does not change the conclusion that there was a single, continuing contract for a single project. The law is settled in this state that the construction of several buildings under a single contract is treated as a single improvement. This principle is stated in 16 Callaghan's Michigan Jurisprudence, Mechanics' Liens, § 19, p 563, as follows:

"The mechanics' lien law provides that in the case of the construction, under a single contract, of a number of buildings or other structures for the same owner on the same lot or contiguous lots, a lien for material or labor furnished shall attach to all the buildings or other structures, 'together with the land upon, around or in front of which the same are constructed' the same as in the case of a single improvement." See also *International Mill & Timber Co v Kensington Heights Homes Co,* 215 Mich 178 (1921).

In the instant case, the construction of the six buildings was for a single apartment complex.

These structures were built on contiguous lots, interconnected by underground tunnels and served by a central heating and cooling system. From these factors, it is clear that this contract called for the sale of materials to a single project and not six separate projects as the plaintiff contends.

In light of these facts, we hold that this was a single project and that the notice of intent to claim a lien should have been filed within 90 days after May 26, 1965. Since the lien was not filed until over four months after the first delivery date, the lien is void.

The next issue that must be resolved is whether the trial court erred in finding that the third-party appellant, Hollenbeck & Sather, was an assignee or guarantor of the Hollenbeck Drywall contract rather than a subcontractor. The importance of this distinction is due to the fact that MCLA 570.1; MSA 26.281 requires that notice of intent to claim a lien be filed by a subcontractor within 90 days after the first delivery date. Therefore, if the appellant is a subcontractor, the lien would be valid since the first delivery date was December 6, 1965, and the notice was filed on March 4, 1966. However, if the appellant was not a subcontractor but merely an assignee or guarantor of Hollenbeck Drywall, it would stand in the shoes of Hollenbeck and the time for filing notice would have passed since Hollenbeck started deliveries and labor in May of 1965.

Appellant claims that it qualifies as a subcontractor since it paid for all the labor and materials purchased by Hollenbeck Drywall during the period from December 6, 1965 to December 28, 1965.

In 16 Callaghan's Civil Jurisprudence, Mechanics' Liens, § 8, p 556, a subcontractor is defined as follows:

"A subcontractor is one undertaking the performance of the whole or part of an existing contract under which another, with whom he contracts, is obliged to perform some specified work, and agrees, not only to do the work, but to do it in accordance with the pre-existing agreement, and so one who takes under the original contract and is to perform in accordance therewith is a subcontractor * * * ." See also *People for use of Towner Hardware Co v Morrison,* 228 Mich 216 (1924).

One of the essential elements of this definition is that the party who is claiming to be a subcontractor must have agreed to perform according to the terms of the original contract. It has been held that this means that the party must have knowledge of the terms of the original contract and agree to be bound by them. *People for use of McDonell v Fidelity & Deposit Co of Maryland,* 232 Mich 238 (1925).

In the instant case, the record is barren of any evidence which would show that the appellant agreed to perform under the original contract or had knowledge of the terms of that contract. The record does show that the appellant agreed to pay the bills of Hollenbeck but this does not support his contention that the agreement made him a subcontractor, but rather that he was merely guaranteeing payment. Therefore, since the appellant stands in the same position as Hollenbeck, the filing of the notice came after the statutory period had lapsed. Thus, the lien is void.

Reversed in part, and affirmed in part.

All concurred.