SAGINAW PATTERN MAKERS' ASSOCIATION v SAGINAW
PATTERN & MANUFACTURING COMPANY

1. APPEAL AND ERROR—JUDGES—FINDINGS OF COURT—COURT RULES.

A judge sitting without a jury will be reversed only if his findings
are clearly erroneous (GCR 1963, 517.1).

2. LABOR RELATIONS—LABOR CONTRACTS—BREACH OF CONTRACT—
GOOD FAITH—FINDINGS OF FACT—IMPLIED COVENANTS—APPEAL
AND ERROR.

A determination of a trial court that an employer did not subcon-
tract work to a nonunion company controls in a suit by a union
for breach of the employer's labor contract which provided that
work shall be subcontracted only to shops in which the em-
ployees enjoy "conditions of employment equal to those condi-
tions in this agreement" and there is no subterfuge by the
employer to defeat or evade the agreement; there is no breach
of an implied covenant of good faith where the trial court's
finding that there was no subcontract is not clearly erroneous.

3. DAMAGES—LABOR RELATIONS—LABOR CONTRACTS—BREACH OF CON-
TRACT—EVIDENCE—PROOFS.

Failure to award damages to a plaintiff union is not error where
no breach of the labor contract was found by the trial court to
support the damages and where the union failed to demon-
strate the asserted damages with the requisite degree of specif-
icity.

Appeal from Saginaw, Eugene Snow Huff, J.
Submitted Division 3 April 10, 1975, at Lansing.
(Docket No. 21023.) Decided June 24, 1975.

Complaint by Saginaw Pattern Makers' Associa-

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 5 Am Jur 2d, Appeal and Error § 841.

[2] 48 Am Jur 2d, Labor and Labor Relations §§ 728–730.

[2, 3] Employer's decision to have work done by independent contrac-
tors rather than by employees as unfair labor practice. 6 ALR3d
1148.

tion and Odin R. Favel, individually and as representative of a class of persons similarly situated, against Saginaw Pattern and Manufacturing Company for an injunction and damages arising out of a breach of a labor contract. Judgment for defendant. Plaintiffs appeal. Affirmed.

*Zwerdling, Maurer, Diggs & Papp,* for plaintiffs.

*Joseph, Wolf & Weinstein, P. C.,* for defendant.

Before: V. J. BRENNAN, P. J., and D. E. HOLBROOK and M. F. CAVANAGH, JJ.

D. E. HOLBROOK, J. We elect to quote the facts of this case, as taken from the detailed opinion of the learned trial court.

"Plaintiffs have instituted this action for an injunction and substantial damages which they claim they are entitled to receive because defendant has breached its contract of employment with plaintiff Union.

"The facts in the case are either undisputed or easily ascertainable from the evidence. During the period of its prior union contract with plaintiffs, defendant had performed work for the General Motors Corporation by responding to invitations to bid on certain specific jobs. In the event defendant's bid was accepted, General Motors issued a purchase order to defendant covering the total amount involved. Defendant would then proceed to supply the finished product to General Motors in accordance with the provisions of the purchase order and General Motors would pay defendant the specific sum stated in the purchase order. In handling such business, defendant performed most of the work in its own pattern and manufacturing shop but often subcontracted portions of a job to the Brettrager Machine Company which would do whatever defendant ordered done and return that part of the General Motors job to defendant which would deliver the finished product to General Motors pursuant to the provisions of the agree-

ment contained in the purchase order General Motors had issued to defendant. Defendant would then pay Brettrager for the work it had done for defendant and collect from General Motors the full amount bid on the total job as indicated by the terms of the purchase order General Motors issued to plaintiff [defendant].

"Since Brettrager was not a union pattern shop, however, plaintiffs changed the previous practice outlined above by expressly including in the present contract with defendant a Memorandum of Understanding which provided in pertinent part as follows:

" 'ITEM 3: The employers agree that at the end of this 18-month period any work subcontracted because of his lack of adequate necessary equipment or manpower shall be subcontracted only to pattern shops in which the employees enjoy virtually the same wages, hours, and other conditions of employment equal to those conditions in this agreement.'

"The Memorandum of Understanding was made pursuant to Article 1 Section 3 of the Union Contract between the parties which insofar as that is material at this time read as follows:

" 'SEC. 3: The laying out of patterns and related pattern equipment; the making, maintaining and repairing of pattern and related pattern equipment: the making, maintaining and repair of wood models, hammer forms, fixtures, plastics, plasters, permanent molds, dies cast, and other processes, techniques and methods or other materials, and related equipment as they pertain to patternmaking and model making performed by the Company shall be done exclusively by employees covered by this Agreement, except as provided for in Memorandum of Understanding.'

"In this suit plaintiffs have charged that defendant specifically breached the terms of the contract by its action in connection with a V-6 and a V-8 diesel engine block job and also a disc brake rotor job ordered by General Motors, resulting in substantial damages which plaintiffs claim they are entitled to obtain, along with a permanent injunction prohibiting defendant from any similar conduct in the future. Plaintiffs insist that defendant has deliberately violated the obvious purpose

and intent of the mentioned Memorandum of Understanding by refusing to hire extra or overtime pattern makers or to subcontract portions of the jobs to other pattern shops in order to increase pattern makers employment as agreed. Plaintiffs charge that defendant has continued to channel its work to Brettrager, the same non-patternmaking machine shop as before the present contract which expressly prohibits the practice.

"Defendant, of course, denies any violation of the contract, claiming that it has not subcontracted any part of its jobs to Brettrager but instead has contracted only with General Motors for all of the work specified in its purchase orders, which it did in its own shop with qualified pattern makers employed by defendant and that any work Brettrager did was under an entirely separate contract Brettrager had made directly with General Motors which was free to do business with any firm it chose on the basis of individual bids from various bidders. Defendant insists that it did not have either the physical or financial resources necessary to do these entire jobs for General Motors and could not have bid on them at all as a complete package designed by General Motors. Defendant admits, however, that in order to get some business for its firm and to keep its own pattern makers employed as it did do, defendant indicated to General Motors what portions of the jobs it could and would bid on and what portions it believed Brettrager could do. General Motors then was free to issue purchase orders to defendant and to Brettrager under separate contracts with each, or to accept bids from other firms on any portions of the jobs or to contract with any of defendant's competitors for the total work desired."

Thereafter, the trial court found:

"Although plaintiffs' counsel inveighs against the alleged 'subterfuge' and 'deception' of defendant in violating the 'spirit and intent' of the contract with a defense of 'transparent nonsense', the contract speaks for itself in clear and unmistakable language. It provides that 'any work subcontracted * * * shall be sub-

contracted only to pattern shops in which the employees enjoy virtually the same wages, hours and other conditions of employment equal to those conditions in this Agreement'.

"Webster's Collegiate Dictionary defines a subcontract as: 'a contract under, or subordinate to a previous contract'. The verb 'subcontract' is defined as follows: 'To contract under, or for the performance of part or all of, another contract'. The legal definition of the term subcontracted is well stated in *People v Morrison,* 228 Mich 216, 221; 199 NW 689, 691 (1924): 'A subcontractor is one who entered into a contract, express or implied, for the performance of an act with a person who has already contracted for its performance'. See also *People v Fidelity & Deposit Co,* 232 Mich 238 Hd 5; 205 NW 157 (1925), *People v US Fidelity & Guaranty Co,* 263 Mich 638 Hd 3; 249 NW 20 (1933).

"The evidence shows that defendant did not enter into a contract with Brettrager, nor subcontract any work to Brettrager, did not supervise or pay Brettrager, or receive any profit on Brettrager's separate contract with General Motors for certain specified work and the extras which Brettrager furnished to General Motors in accordance with its own purchase order issued directly to it by General Motors for the work Brettrager did for that company. Although defendant had previously subcontracted work to Brettrager, none of defendant's work was 'subcontracted' after the present contract between the parties hereto went into effect. As a matter of fact and law, defendant then made its own separate, individual contracts with General Motors and so did Brettrager.

"Plaintiff's counsel asserts that: 'Certainly defendant's precise mode of operation was not anticipated * * * nor could all such actions be anticipated. Any attempt to so anticipate would make the reaching of any reasonable agreement an impossibility.' This court is compelled to hold that such conclusions are quite contrary to the most basic legal principles. The numerous cases which have so decided are succinctly summarized in *Stott v Stott Realty Co,* 306 Mich 492 Hd 5; 11 NW2d 215 (1943), in headnote five, the law is stated in the following pertinent language:

" 'Where there is no ambiguity in the language used in a contract, the language used will be confined to its usual and ordinary meaning as the Courts will not make a new contract under the guise of construction because it later appears that a different agreement should have been consummated in the first instance'.

*"See also to the same effect, Ginsberg v Linen Service Co,* 292 Mich 70 Hds 1, 2, and 3; 290 NW 331 (1940).

"If plaintiffs or their attorneys had desired a professional, or trade construction of the disputed provisions of the contract they could have submitted the language involved here to an arbitrator for interpretation as expressly provided in the contract itself. Instead they chose to come into court in an effort to obtain a virtual reformation of the contract which is not warranted by the law or the evidence presented here.

*"Brotherhood of R R Signalmen v Southern RR Co, 380 F2d 59 (CA 4, 1967)* and *Oliver v Perkins,* 92 Mich 304; 52 NW 609 (1892), and most of the other cases cited by plaintiff's counsel presuppose a violation of the contract between the parties in a situation where it either had been decided or conceded that a breach of contract on the part of one of the parties had taken place. Such is not the case here where none of defendant's work was subcontracted and no violation of defendant's contract with plaintiffs occurred. Plaintiffs having failed to prove any violation of contract on the part of the defendant, no damages exist and no injunction will issue. The case is dismissed with costs to defendant."

No matter how plaintiffs paint this case, much of the argument resolves itself into attacking the findings of the trial judge. The judge sat without a jury and will be reversed only if his findings are clearly erroneous. GCR 1963, 517.1. A review of the record and briefs does not reveal to us such error and we do not reverse.

We also dispose of the other questions presented which are of somewhat greater significance, *e.g.,*

plaintiffs assert that there has been a breach of an implied covenant of good faith. The contract contains a provision which states: "The parties agree that its officers, members, representatives, agents and committees shall not engage in any subterfuge for the purpose of defeating or evading the provisions of this Agreement." This provision, in essence, serves the same purpose as plaintiffs' theory of breach of implied covenant. This being so, the argument basically resolves again to passing upon the trial court's findings, *i.e.,* whether the defendant used 'subterfuge' to defeat or evade the agreement or breached its implied covenant of good faith. We cannot say that the trial court was clearly erroneous on this ground anymore than on the other factual findings it made, as the trial court's determination of no subcontract controls, *i.e.,* if there was no subcontract there could be no breach of the implied covenant.

Plaintiffs assert that the arrangement amounted to an interference with plaintiff union's contractual relations with other union subcontractors. There was no showing of a contractual relationship between Brettrager and the union with which defendant could interfere; and we fail to see how this arrangement interfered with the union's relation with other unions and contracts separate and distinct from the one at issue. This argument evidently was designed to seek a different factual outcome under a different guise.

Plaintiffs rely upon *Brotherhood of Railroad Signalmen of America v Southern RR Co,* 380 F2d 59 (CA 4, 1967), to support an assertion that the trial court erred in not awarding damages. We point out that in the *Brotherhood of RR Signalmen* case the lower court had agreed that the contract had been violated, *id* at 63, but declined

to award damages. In the present case, no such breach was found to support damages. Thus, there was no error in not awarding damages. Moreover, the union failed to demonstrate these asserted damages with the requisite degree of specificity; as such, they were left in the realm of conjecture. *Cf. Allen v Michigan Bell Telephone Co,* 61 Mich App 62; 232 NW2d 302 (1975).

Defendant has argued that plaintiffs have failed to exhaust their administrative remedies. We need not pass upon this issue as it is irrelevant and unnecessary in light of our disposition of the case.

We find no error in the trial court's decision.

Affirmed. Costs to defendant.