PEOPLE, *for use of* KROENKE, *v.* TITLE GUARANTY &
TRUST CO.

MECHANICS' LIENS—PUBLIC BUILDINGS—CONTRACTOR'S BOND—MA-
TERIALMEN—SUBCONTRACTORS—ENFORCEMENT OF BOND.

> In an action on a bond given by the contractor for the erec-
> tion of a high school building under sections 10743-10745, 3
> Comp. Laws, evidence examined, and *held*, that plaintiff was
> a materialman, and not a subcontractor, and was therefore
> entitled to recover on the bond.

Error to Washtenaw; Kinne, J. Submitted October
8, 1908. (Docket No. 6.) Decided November 30, 1908.

Assumpsit by the People of the State of Michigan, for
the use and benefit of August Kroenke, Paul Schlesner,
and Albert Haeger, copartners as the Badger Wire &
Iron Works, against Edwin M. Campfield and the Title
Guaranty & Trust Company, upon a statutory bond.
There was judgment for plaintiff on a verdict directed by
the court, and defendant company brings error. Af-
firmed.

*Graves, Hatch & Wasey*, for appellant.

*J. W. Bennett*, for appellee.

BLAIR, J. This is a suit brought upon a contractor's
bond given under the provisions of sections 10743-10745,
3 Comp. Laws, for the value of certain lockers furnished
by the plaintiffs, the Badger Wire & Iron Works, of
Milwaukee, Wis., to Edwin M. Campfield, the con-
tractor for the erection of a high school building at Ann
Arbor, Mich. Defendant Campfield, the contractor, was
not served with process, and did not appear, and the suit
is defended by his surety on the bond, the Title Guaranty
& Trust Company.

The sole question before the court below and this court

is whether or not plaintiffs were materialmen or subcontractors. At the conclusion of plaintiffs' case, defendant moved the court to direct a verdict for defendant, on the ground that plaintiffs were subcontractors, and not materialmen. The motion was denied and defendant excepted. This is the basis of the first assignment. Defendant offered no testimony, but again raised the same question by presenting three requests to charge. The requests were refused, and defendant excepted, and the other assignments cover this refusal and the action of the court in directing a verdict for the plaintiffs.

Negotiations between plaintiffs and contractor Campfield began with a letter dated February 8th, which, with the inclosed specifications, was as follows:

"Ann Arbor, Mich., Feb. 8, 1906.
"Badger Wire & Iron Works,
"Milwaukee, Wis.
"*Gentlemen:* Please find inclosed specification and floor plan of lockers, which we need for the High School and Library Buildings at Ann Arbor, Michigan. Quote me your lowest price on the same, to be delivered when ordered, this coming spring or early summer, f. o. b. cars Ann Arbor.

"Yours truly,
"E. M. Campfield.

" Lockers. Double tier lockers to be furnished and set up complete where indicated in boys' and girls' locker rooms on ground plan. All to be made of standard steel with reinforcing frames and vent perforations in doors as directed and heavy wrought-hinges and master keyed rim locks. To be constructed in stacks as shown and with vent duct as detailed formed in corner of every four lockers and arranged for connection to forced draft system of building. Each locker to be 12″x12″x3′6″ inside. Each to be fitted with one double ceiling and two double side hooks and long hat hook on back of door. Double hook coat poles for upper lockers. All to be of standard enamel finish inside and outside and left perfect and complete in place by this contractor."

In reply to this letter, plaintiffs wrote on February 13, 1906, in part, as follows:

"Before quoting on this contract, we should like further information in reference to the vent ducts called for. We notice that details of these are mentioned in the specifications and would like you to forward these details so we may know just what is required. * * * From the specifications we gather that lockers the same as shown on the double page illustration in the booklet inclosed herewith will be wanted. We give you below a description of the material we would propose to use, and in your reply kindly indicate in what respect, if any, changes are advisable, which will then be used as the basis for the quotation we will make you. * * * On receipt of particulars as to the vent ducts and your approval of the material we propose using or suggestions of changes in reference to same, we shall be glad to advise you fully as to price."

To the letter of February 13th Campfield replied on March 3d:

"We have no detail except the arrangement as sent you. * * * All we want is what will fill the specifications at cheapest cost, but, of course, must be good and all right."

Negotiations, having been abandoned in March, 1906, were resumed in July following by the following letter from Campfield:

"E. M. CAMPFIELD,
"Builder, Manufacturer, etc.
"ANN ARBOR, MICH., July 23, 1906.
"BADGER WIRE & IRON WORKS,
"Milwaukee, Wisconsin.
"*Gentlemen:* Some time since you quoted us the prices on 548 lockers. We were not in need of the lockers at that time, and want to place an order this week for the same, and kindly ask you to quote us the price on the same according to the specifications that you had at that time, except the hardware. We wish the prices on the lockers with and without the hardware trimmings. Awaiting your early reply, I am,
"Yours truly,
"E. M. CAMPFIELD."

To this letter plaintiffs replied July 31, 1906, as follows:

"E. M. Campfield,
"Ann Arbor, Mich.

"*Dear Sir:* Replying to your letter of the 23d inst., we confirm our quotation of March 13th to furnish 548 lockers or compartments, each to measure 12″x12″x42″ inside and arranged in double height, and as shown in the sketch sent us some time ago, at net fifteen hundred dollars ($1,500.00) knocked down and on board cars at Ann Arbor, including a 6″ length of pipe at points indicated on the sketch referred to. The lockers will be of the style as shown on pages 6 and 7 of the inclosed booklet. They will be constructed entirely of No. 20 U. S. S. Gauge sheet steel in $\frac{3}{4}″x\frac{3}{4}″x\frac{1}{8}″$ steel angle frames. The doors will be fitted with rim locks of standard make, without duplicate, two keys to be furnished for each lock, also a master-key that will operate all locks. Each compartment will be fitted with one double ceiling and two side hooks and hat hook on back of each door. Double coat-hook poles will be furnished for the upper tier of lockers. The finish will be black japan baked. Replying to the inquiry in your letter of July 23rd, we will make allowances as stated below in case we will not be obliged to furnish the items mentioned. A deduction of the amount set opposite the items specified below may be made in case that item is not wanted.

"Double ceiling hooks _____ $30 00
Side hooks _____ 45 00
Coat poles _____ 30 00
Locks _____ 225 00
Number plates _____ 20 00

"We should require about 60 days' time to execute an order for this quantity of lockers. If you do not fully understand our proposition, kindly advise and we shall then be pleased to give you such additional information as you may require. We are,
"Yours very truly,
"Badger Wire & Iron Works."

August 11th Campfield wrote plaintiffs:

"You may place my order for the lockers in question as per quotations without the hardware, that you named prices thereon, all to be as your quotations and as per your plans and specifications as have been furnished you regarding the hardware."

August 15th plaintiffs replied, saying at the close of their letter:

"In order that we may have no further misunderstanding regarding this contract, kindly state in your reply whether the specifications as given in our letter of the 31st ult. are approved in every particular. If not, kindly state definitely in what respect same are not satisfactory, and, if any suggestions you may make will involve additional expense, we shall then advise as to amount of same. We would prefer not to have the contract at all if there is later to be any dispute or trouble regarding it."

In response to the last-mentioned letter, Campfield wrote on August 17th as follows:

"We have your favor of Aug. 15th to hand, and in reply will say that you may place our order for the lockers, as per your letter of the 15th inst. With regards to the hardware, such as you mention in your letter, will say that we wish you to have holes bored, and do all necessary punching, so that it may be made ready for the reception of the hardware when it is furnished by the board of education there at your factory, or at the building. Further will say that we cannot see where there will be any chance for controversy."

Plaintiff Haeger testified:

"I never at any time received from Mr. Campfield any plans or specifications other than the paper attached to the letter that was sent to me. We did not follow those plans and specifications in manufacturing the lockers. * * * We could not make a locker by those specifications. The material is not specified, and we would have to guess at some of it. * * *

"Q. They had an arrangement for vent duct in the corner of every four lockers?

"A. No; that vent duct is a long tube. They had a tube from the bottom to the floor. That had nothing to do with that.

"Q. There was an arrangement for a vent to go to every four corners, was there not?

"A. No, sir.

"Q. What kind of frames did they have?

"A. Steel angles $3\frac{1}{4}$x$3\frac{1}{4}$x$\frac{1}{8}$ steel angles which were not called for.

"*Q.* They had enameled finish, didn't they?

"*A.* They were japanned.

"*Q.* That is enameled?

"*A.* Not what is regularly understood to be enameled; that is japanned.

"*Q.* Is not that enamel?

"*A.* That depends. Broadly speaking it is, but as a definite proposition it is not. If you say enameled in a general way, it includes this, but that is not called enamel.

"*Q.* Japan is a kind of enamel?

"*A.* Enamel is something different from japan.

"*Q.* I ask whether black japan is not a kind of enamel?

"*A.* I would not say it is."

We are of the opinion that the court did not err in directing a verdict for plaintiffs. Tried by the test approved of in *People, for use of Davis,* v. *Campfield,* 150 Mich. 675, and *People, for use of Reynolds,* v. *Banhagel,* 151 Mich. 40, plaintiffs never agreed that the original contract of the board of education with Campfield should be the standard by which the performance of their contract should be judged. They prescribed their own standard in their letter of July 31st, which was accepted by Mr. Campfield. The original contract was indefinite and lacking in details, for which plaintiffs substituted their own definite proposition to furnish to Campfield the lockers as specified by them, leaving him to take his chances with the board of education. Contractor Campfield evidently had this understanding of their relations, as evidenced by his letter of December 3, 1906, in which he said:

"We beg to advise you that we must complete our contract here at Ann Arbor, which you are furnishing material for, not later than Jan. 1st, 1907."

Judgment affirmed.

GRANT, C. J., and MONTGOMERY, OSTRANDER, and McALVAY, JJ., concurred.