HUB ELECTRIC COMPANY, INC., an
Illinois Corporation, Plaintiff,

v.

AETNA CASUALTY AND SURETY
COMPANY, a Connecticut Corpora-
tion, et al., Defendants.

Civ. A. No. 74–10048.

United States District Court,
E. D. Michigan, N. D.

Aug. 4, 1975.

Isackson & Neering, P. C., John J.
Hebert, Bay City, Mich., Berger, New-
mark & Fenchel, Harry D. Lavery,
Chicago, Ill., for plaintiff.

Phelps, Linsey, Strain & Worsfold, P.
C., Alan R. Smith, Grand Rapids, Mich.,
for defendants Aetna Casualty & Surety
& Gust Construction Co.

Baker, Baker & Selby, Ralph I. Selby,
Bay City, Mich., for defendant Bay
Electric Wholesale Co.

Thrun, Maatsch & Nordberg, Donald
J. Bonato, Lansing, Mich., for defendant
School District.

## MEMORANDUM OPINION

JAMES HARVEY, District Judge.

These are motions for summary judgment, one having been filed by plaintiff, Hub Electric Company, Inc. (Hub), and the other by defendants Aetna Casualty and Surety Company (Aetna) and Gust Construction Company, Inc. (Gust). In 1972, Gust contracted with defendant Crawford-Ausable School District to construct a high school in Grayling, Michigan. Pursuant to the express terms of the contract, and as required by 1963 P.A. 213 (M.C.L.A. § 129.201 et seq.), the Michigan Public Works Bonding Statute, Gust executed a labor and materials bond. Aetna is the surety on that bond. As work progressed, plaintiff provided electrical fixtures and supplies valued at $28,702.40, which were actually used in the construction. It seems to be agreed that plaintiff has been paid only $8,003.60, and this suit is an attempt to recover the balance.

Three of the five counts of the Complaint are directed at Aetna, and represent attempts by plaintiff to recover on the bond. The issues raised in these motions go directly to plaintiff's ability to do so, either as a materialman (as alleged in Counts I and II), or as a subcontractor (as alleged in Count V). The Court must determine whether plaintiff is a "claimant" as recognized by Section 6 of the Bonding Statute (M.C.L.A. § 129.206), and if so, whether plaintiff gave the proper statutory notice to defendant as is required by Section 7 (M.C.L.A. § 129.207), for it to recover as a materialman.

A "claimant" is defined in Section 6 of the Bonding Statute as:

" . . . a person having furnished labor, material, or both, used or reasonably required for use in the performance of the contract. 'Labor and material' includes that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the contract."

Two classes of "claimants," laborers and materialmen, may seek the protection of the bond under Section 6. It is undisputed that plaintiff is a materialman, and the plain language of the statute would thus seem to settle the issue without further consideration. But as noted in a prior opinion of this Court, the Michigan Supreme Court has chosen to distinguish some materialmen from others. Defendant's claim is that plaintiff falls within the class of materialmen who are excluded from the Statute's protection, i. e., that plaintiff is a materialman to a materialman. See *People v. Wayne Electric Motor Company*, 269 Mich. 537, 257 N.W. 877 (1934).

Before determining plaintiff's status as a claimant, however, the requirements of Section 7 of the Statute must be examined, for if plaintiff failed to provide defendant with the notice required therein, then under no circumstances can it recover as a materialman. Section 7 requires a "claimant not having a direct contractual relationship with the principal contractor" to serve notice on the latter within thirty days of first supplying materials informing him of the nature of such materials being or to be supplied and to, in addition, give written notice to the principal contractor and the governmental unit involved within ninety days of the date upon which materials were last supplied, stating the amount claimed and the name of the party to whom the material was supplied.

Plaintiff's complaint, Count I, Paragraph 9 states that plaintiff first furnished material on March 9, 1972, and last furnished material on December 10, 1973. To comply with the statute, the first required notice should have been sent by April 8, 1972. No notice was actually sent until October 18, 1973. That notice purported to be sent pursuant to the provisions of the bond and the laws of Michigan. It noted that certain materials had not yet been shipped. A second notice dated December 20, 1973, followed when the shipment had been

completed. Thus, the notice requirements which plaintiff provided complied with the ninety day requirement of Section 7, but no thirty-day notice was given.

A copy of the bond is attached to the Complaint. Its only requirement regarding the giving of notice is that a claimant who has not been paid so notify the contractor and surety within ninety days of the last delivery. Plaintiff has thus complied with all the requirements of the bond. The only question is whether plaintiff's claim is defeated by its failure to comply with the initial thirty-day requirement of the statute. Plaintiff argues that the thirty-day requirement is not important, and that defendants can show no prejudice or injury by failure of plaintiff to provide such notice. Therefore, plaintiff concludes that its failure should be excused.

Plaintiff correctly notes that all of the cases which have dealt with the notice requirements of the Public Works Bonding Statute have always referred to the final notice requirement. This is true, but only because the prior act, 1905, P. A. 187 (M.S.A. § 26.321 et seq., M.C.L. A. § 570.101 et seq.) contained but a single notice requirement, that being within sixty days after furnishing the last material. All the cases which have discussed the notice requirements have dealt with the prior act. While 1963 P. A. 213 has been in force for over a decade, its new thirty-day initial notice requirement has never been construed by the Appellate Courts in Michigan. No implication can be derived from this which would indicate that the requirement is not necessary or important to establishing a claim under the present statute.

Plaintiff has argued that the Michigan Courts have held that the failure of a claimant to comply with the notice requirement under the prior statute have not barred the claim unless the defendants can show prejudice or injury. The cases which plaintiff cites in support have no applicability to the present case.

*New Jersey Terre Cotta Co. v. Traves*, 188 Mich. 415, 154 N.W. 120 (1915), and *People v. Connell*, 195 Mich. 77, 161 N. W. 844 (1917), predate amendments to the Statute in 1925 and 1927 which apparently evidenced a concern for the protection of the surety. In *People v. Michigan Surety Co.*, 360 Mich. 546, 104 N.W.2d 213 (1960), the history of the statute is briefly discussed, the point being that the old rule regarding lack of prejudice to the surety lost its validity with the holding in *People v. W. L. Thon Co.*, 307 Mich. 273, 11 N.W.2d 886 (1943). The most recent case to discuss the mandatory nature of the notice requirement is *People v. Cooke Contracting Co.*, 372 Mich. 563, 127 N.W.2d 308 (1964). It is certain that the predecessor of the present public works bonding statute required strict adherence to the notice requirement for a claimant to seek to recover on the bond. The purpose of that rule was to protect the surety from becoming the "virtual insurer of all debts" and from having to "supervise the activities of contractors and subcontractors far beyond what is necessary under this statute." *Id.* p. 566, 127 N.W.2d p. 309. There is no reason to believe that the present statute does not serve the same goals or that strict compliance with its notice requirements is not mandatory.

As has been noted, the bond in question here omitted any reference to the initial thirty-day requirement. Plaintiff implies that it should be allowed recovery on the bond in view of the fact that it met the requirements therein, even though it failed to meet the statutory requirements. This brings up the question of whether a statutory requirement can be waived. It appears that it cannot. The general rule is stated in *Williamson v. Williams*, 262 Mich. 401, 404, 247 N.W. 704, 705 (1933): "Where a bond is given under the authority of a statute, that which is not expressed but should have been incorporated, is included in the bond." The provisions of the statute are read into the bond and are given full effect.

"When parties execute a statutory bond, they are chargeable with notice of all provisions of the statute relating to their obligation . . ." *Id.* p. 406, 247 N.W. p. 706. Of course, plaintiff or any other claimant, is not a party to the bond. It may be argued that while the parties may not connive to deprive claimants of statutory rights, they may, if they wish waive statutory requirements which are designed for their own protection. While there may be some merit to this, the argument is foreclosed by this language from *People v. W. L. Thon Co., supra,* 307 Mich. p. 278, 11 N.W.2d p. 888:

> "The statute requires notice by materialmen within 60 days of the date of the furnishing of the last of materials. This requirement could not be the subject of waiver by acts of the contractor and plaintiff (materialman)."

■ The conclusion is that plaintiff has not met the statutory notice requirements by virtue of its failure to notify defendants within thirty days of first delivery of the nature of the materials being furnished or to be furnished. Thus, the Court need not express an opinion as to whether plaintiff is a "claimant" under the statute in its role as a materialman. However, plaintiff also claims to be a subcontractor for purposes of recovery on the bond, and as such, would not be subject to the notice requirement of the statute.

The question of plaintiff's status as a subcontractor is heavily dependent upon its precise relationship to the contractor. Affidavits have been submitted by both sides which attempt to establish this relationship. Preliminarily, the Court notes that plaintiff objects to defendant's three affidavits on the basis that they fail to state facts and are affidavits of opinion and legal conclusion, and as such, not admissible as evidence per Rule 56 F.R.Civ.P. This Court has examined the two affidavits which are appropriate in considering this point, those of Frans Jungslager and John Schnell,

and believes that portions beyond a doubt represent opinions. However, both affiants were architects for the high school project and as such, are competent to testify as to the plans and specifications which they prepared.

On December 6, 1971, Vander Meiden, Koteles & Associates, Inc., the architects, sent plans and specifications for the school job to Art Keeler, plaintiff's agent, in Royal Oak, Michigan. Keeler prepared a quotation in accordance with the plans and specifications and mailed same to the electrical contractor on December 13, 1971. (See Keeler affidavit and attached Exhibits A and B). On March 9, 1972, Bay Electric Wholesale Co., Inc. placed a purchase order for electrical equipment and supplies with plaintiff. Bay Electric considered itself to be the jobber on the school project. (See Bennington affidavit and attached Exhibit A). The purchase order, #E–5683 is referred to in a letter from Ernst Electric Co., dated March 3, 1972 to Art Keeler, in which it is stated that payment on the order would be made by check payable jointly to Bay Electric and plaintiff. The letter also states that Mr. Bennington of Bay Electric would advise Ernst as to the correct amount for which the check should be drawn. (See Exhibit 3 attached to plaintiff's motion). On April 12, 1972, plaintiff submitted drawings from the plans and specifications which had been sent to Art Keeler. Those drawings embodied plaintiff's interpretations of the plans and specifications as they applied to the electrical equipment which was to be furnished. The architects approved the drawings on May 31, 1972. (See Burger affidavit and attached Exhibit A). Plaintiff proceeded to manufacture certain equipment and modify other of its stock equipment, especially for use on the school job. All of the equipment was sent directly to the job site in Grayling by plaintiff.

Frans Jungslager, one of the architects, drafted the electrical portions of the school project specifications. His

affidavit includes portions of those specifications. The stage lighting system is to be "similar to Hub Electric Company # CRB 2445–H system," but other equipment is also stated to be acceptable (Exhibit A attached to affidavit). However, other portions of the specifications designate only Hub products. (Exhibit C attached to affidavit: Panic Stations shall be Hub # 9991 series . . .") The affidavit says this is done because it would be very time-consuming to determine the name and model number for each of the acceptable suppliers, and that the general specifications put the suppliers on notice that other suppliers will be acceptable. Mr. Jungslager concludes that he, as architect, would not approve plaintiff as a subcontractor, for it is his policy to have only one of such in order to more easily identify who is responsible for mistakes.

John Schnell, another of the architects on the school project, drafted and prepared the architectural trades and contract sections of the specifications. He states in his affidavit that it is his policy to allow competition for all supplies, especially in governmental jobs. The Product Approval Standards (Exhibit A attached to affidavit) substantiate this view. It is also noted that Section 2.-0(e) says: "Whenever any product is specified, or shown by describing proprietary items, model numbers, catalog numbers, manufacturer-trade names or similar reference, the bidder obligates himself to submit proposals and accept awards of contracts based upon the use of such products. Use of such reference is intended to establish the measure of quality which the architect has determined as requisite and necessary for the project."

The two architects' affidavits establish that the competition was open to all suppliers regardless of whether one was specified by name to the apparent conclusion of others. In such instances, it is clear that the purpose of the architect was to set up a particular product as a standard by which competing products were to be judged and that products of other manufacturers had to be equal to that specified to be approved.

While the architects state that in their view, plaintiff was a supplier or materialman, the case law ultimately must judge what plaintiff's status was. The test in Michigan is set forth in *People v. Valley Mantle & Tile Co.*, 200 Mich. 554, 166 N.W. 839 (1918): "The subcontractor, is an undercontractor— one who takes under the original contract, and is to *perform in accordance with the original contract.*" (emphasis in original) Further, a subcontractor is one who contracted to become such after contemplation of the original contract and agreeing that it would be the standard for his performance. Unless this requirement is complied with, the mere furnishing of material which meets the contract specifications does not make one a subcontractor. Nor does the fact that the plans and specifications were analyzed by itself indicate that one is a subcontractor unless it appears that there was present an agreement to perform in accordance with the terms of the original contract; that it would provide the standard by which one's performance would be judged. See also *People v. Finn*, 162 Mich. 481, 127 N.W. 704 (1910); *People v. Title Guaranty & Trust Co.*, 154 Mich. 614, 118 N.W. 586 (1908); *People v. National Construction Co.*, 159 Mich. 133, 123 N.W. 801 (1909); *People v. Cotteral*, 119 Mich. 27, 77 N.W. 312 (1898); *People v. Connell*, 195 Mich. 77, 161 N.W. 844 (1917); *People v. Campfield*, 150 Mich. 675, 114 N.W. 659 (1908).

In *People v. Connell, supra*, the plaintiff Connell entered into a contract with a board of education to construct a school in Detroit under architectural plans and specifications. Connell contracted with plaintiff to furnish certain interior finish. Plaintiff did "manufacture the interior finish in conformity with the plans and specifications of the architects." *Id.* p. 79, 161 N.W. p. 845. It was concluded that

plaintiff was a subcontractor because the original contract provided the standard by which its performance was judged.

In *People v. Finn, supra,* defendant Finn contracted to build a fire house according to architects plans and specifications. Moynes subcontracted to furnish carpentry work, builder's hardware, and to line some bins and stalls. The plaintiff contracted with Moynes by letter to furnish the hardware trimmings as per plans and specifications. Moynes, the subcontractor, went bankrupt and it was necessary for Finn to complete his contract at a loss. Plaintiff then brought suit on Finn's bond. It was determined that plaintiff was a subcontractor, the court accenting these facts: Plaintiff had quoted a price to Moynes for the hardware "as per plans and specifications;" plaintiff

> " 'went all over the plans and specifications prepared by (the architects) for this job,' and from them ascertained what work would be required, and agreed to do the work according to such plans and specifications. These plans and specifications were a part of the original contract, which required the contractor to furnish material and articles in conformity therewith, under the direction and to the satisfaction of the architects." (162

Mich. at p. 484, 127 N.W. at p. 705); that plaintiff provided the hardware from its shelf stock was irrelevant since it was provided with the plans and specifications of the original contract, as the standard by which its quality or satisfactoriness would be judged. *People v. Finn, supra* is very difficult to distinguish from the present case.

*People v. Campfield, supra,* provides a factual situation which may be compared and contrasted to that here. Once again, the defendant had contracted to build a school. The contract included specifications which called for stiffeners for the window sashes. They were to be "Davis or other equal steel stiffeners." Defendant contacted Davis, who agreed to furnish the stiffeners according to measurements provided by a subcontractor to defendant. The original contract did not specify the dimensions needed for each stiffener. It was held that the plaintiff, Davis, had not agreed to perform in accordance with the original contract; that in fact, the plaintiff could have complied with the contract which bound him to the subcontractor while at the same time providing material which did not conform to the contract between the principal contractor and the board of education. Thus, plaintiff was found to be a materialman.

Defendants rely heavily on *People v. Valley Mantel & Tile Co., supra,* a case which was able to distinguish the *Finn* decision, and from it conclude that the plaintiff, like those in *Valley Mantel & Tile,* was not a subcontractor. The case involved a school contract with defendant as principal contractor. The building was to be erected in accordance with plans and specifications prepared by an architect. The plaintiffs had furnished certain materials used in the construction, presumably, directly to the defendant. Some of the plaintiffs had before them the plans and specifications at the time their bids were made and, reading the opinion liberally, it would appear that the materials thus provided met the requirements of the plans and specifications. The facts are somewhat obscure in *Valley Mantel & Tile,* unfortunately, and thus it is not clear whether the plans and specifications were in fact part of the principal contract. It may well be that they were not, based upon the language the Court used to distinguish the facts from those in *People v. Finn,* where it was pointed out "the proposition to furnish materials was to be in accordance with plans and specifications which were a part of the original contract, and the subcontract was made with especial reference to the original contract, plans and specifications." 200 Mich. p. 558, 166 N.W. p. 840.

Furthermore, another fact which appeared to be important to the Court was

that the architect testified that there were no subcontractors, and the original contract provided that the contractor could make no subcontracts without the architect's approval.

Testimony of a similar nature has been provided by the Jungslager and Schnell affidavits in the present case. It should be noted, however, that neither asserts that they had the authority per the original contract to approve subcontractors. The Court cannot find a clause in the original contract similar to that discussed in the *Valley Mantel & Tile* case. It may well be that there is. At any rate, the architects had the final approval on all aspects of the job, including the satisfactory quality of the materials, and this is an equivalent authority. In this case, the architects approved the materials provided by plaintiff, and thereby gave plaintiff a status which the law is left to determine.

It is not important what the architects thought plaintiff's status was. In fact, it is not important what plaintiff thought itself to be. The sole question before this Court is not what plaintiff was called, or what its position is in the hierarchy of contractors, subcontractors, and suppliers might have been, but rather what plaintiff's legal status was for the purposes of the Public Works Bonding Statute. What this Court can gather from the many cases cited above, is that the focus must be on plaintiff's relationship with the principal contract in order to determine its status. If the requisite relationship is present then *for the purposes of the statute*, the plaintiff is a subcontractor, and may look to the bond for payment. Under those circumstances, the defendants may not complain that they regarded plaintiff as a supplier. As an aside, the Court is certain that plaintiff was happy to call itself anything defendant liked as long as it made the sale, and as long as the statute regarded one in its position as entitled to protection.

In the present case, plaintiff's agent was contacted by Frans Jungslager, one of the architects, even before the principal contract was signed. The agent was requested to comment on the plans and specifications which listed many Hub products by name and number. The significance of this is not that it designated Hub as the sole supplier, but that it provided a mandatory standard of excellence which Hub or any other manufacturer would have to measure up to in order to properly perform. Specific requirements were established by the architects which apparently could not be varied by the subcontractor or contractor independently. It has not been shown that the subcontractor could establish separate standards for electrical fixtures between itself and plaintiff.

A quotation was submitted by plaintiff and eventually accepted after approval only by the architects. There is no question that the principal contract, and the plans and specifications of the architects, provided the standard by which plaintiff's performance was to be gauged. Plaintiff not only reviewed those plans and specifications in preparing its submittals, but was placed by defendants in the position of having to fulfill the requirements of the principal contract in order to have performed satisfactorily.

The exact contractual relationship between plaintiff and Ernst, the electrical subcontractor, or Bay Electric, the jobber, has not been established. The payment from Ernst to Bay City Electric and plaintiff jointly would indicate the superfluous role played by Bay Electric in the scheme of things. It may well be that plaintiff's relationship to Ernst was that of a direct supplier—Ernst handling the electrical construction at the job site, with several suppliers (See Exhibit C, Schnell affidavit) providing the fixtures and supplies. In this view, plaintiff and the other suppliers are quite easily seen as subcontractors in the practical sense, as well as the legal sense.

It is this Court's view that under Michigan law plaintiff must be consid-

84

ered a subcontractor. As such, plaintiff has complied with all the requirements necessary for it to recover on the bond executed by defendant Gust pursuant to 1963 P.A. 213. Plaintiff is therefore entitled to summary judgment on Count V of its Complaint.