585 F.2d 183
 HUB ELECTRIC COMPANY, INC., Plaintiff-Appellee-Cross-Appellant,
v.
GUST CONSTRUCTION COMPANY, INC., and Aetna Casualty and
Surety Company, Defendants-Appellants-Cross-Appellees.
 Nos. 76-2607, 76-2608.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 20, 1978.
Decided Oct. 13, 1978.
 
 Alan R. Smith, Linsey, Strain & Worsfold, P. C., Grand Rapids, Mich., for defendants-appellants-cross-appellees.
 John J. Hebert, Isackson & Neering, P. C., Bay City, Mich., for plaintiff-appellee-cross-appellant.
 Before WEICK, EDWARDS and ENGEL, Circuit Judges.
 ENGEL, Circuit Judge.
 
 
 1
 This matter is before the court upon cross-appeals from a judgment of the district court awarding damages to Hub Electric Company in the amount of the unpaid balance due it for certain stage lighting equipment which Hub furnished in the construction of a public high school in Grayling, Michigan, for the Crawford-AuSable School District. The defendant Gust Construction Company was the prime contractor for the project. Pursuant to the 1963 Michigan Public Works Bonding Act, M.C.L.A. § 129.201 Et seq., M.S.A. § 5.2321(1)-(11), Gust contracted for a payment bond with appellant Aetna Casualty and Surety Company. The relevant details of the transaction are set forth in an opinion of the district court reported at 400 F.Supp. 77 (E.D.Mich.1975) and in an unreported opinion filed in the district court on August 19, 1976.
 
 
 2
 In the reported opinion, the district court entered a summary judgment in favor of Hub on Count V of its second amended complaint, holding that Hub was a subcontractor on the Grayling High School job and that it was entitled to recover upon the bond, having complied in all respects with the requirements of the 1963 Act, Supra. In the unreported opinion of August 19, 1976, the trial court further ruled that Hub was a third-party beneficiary of the contracts between Gust and Aetna and Gust and the Crawford-AuSable School District, as alleged in Count II of the complaint. Judgment on those counts was entered in a stipulated amount of $22,225. Those opinions also entered summary judgment in favor of the defendants on Counts I and III of Hub's complaint.[1]
 
 
 3
 While the issues appear to have been submitted to the court in the form of cross motions for summary judgment, it is apparent from the conduct of the parties, both in the district court and on appeal, that the case was, in substance, submitted to the trial court for decision on the merits upon a stipulated record consisting of the several affidavits, counter affidavits and relevant exhibits pertaining to the numerous theories of recovery and of defense. In the interest of clarity, we believe it would have been the better practice for the trial court to have obtained a more precise stipulation from the parties for submission of all issues on the merits, thus avoiding any possibility that the loser would claim that there yet remained unresolved disputes of fact which made the summary judgment procedure inappropriate. Since no such claim, however, has ever been made in the district court or here, we, like the parties, proceed to treat the issues as having been tried to the court on the merits.
 
 
 4
 In his reported opinion, Judge James Harvey denied recovery under Count I of the complaint, which asserted plaintiff's rights as a materialman. Judge Harvey reasoned that because the plaintiff had failed to comply with the 30-day notice requirement of Section 7(a) of the 1963 Act, M.C.L.A. § 129.207(a), M.S.A. § 5.2321(7)(a),[2] its rights as a materialman were defeated. 400 F.Supp. at 78-80. On the other hand, he held that Hub was also a subcontractor under Michigan law, Id. at 80-84, and that the 30-day notice requirement did not apply to subcontractors. See id. at 80, 84. He therefore concluded that Hub was entitled to recover upon the bond under Count V.
 
 
 5
 We agree with Judge Harvey that the 1963 Act applies to the contract here,[3] to the exclusion of the previously applicable 1905 Mich.Pub. Act No. 187, as amended, M.C.L.A. § 570.101 Et seq., M.S.A. § 26.321 Et seq. The 1963 Act requires the execution of both performance and payment bonds, and at issue here is the payment bond provision of that statute.
 
 
 6
 As Judge Harvey noted, Hub filed a notice under Section 7(b) within 90 days after it last supplied the lighting equipment, although it had failed to serve the subsection (a) notice within 30 days after it began furnishing the equipment. 400 F.Supp. at 79. The notice which Hub provided, however, complied with all the requirements of the bond, which omitted reference to the initial 30-day notice. Id.[4] Nevertheless, Judge Harvey held that the absence of such reference in the bond did not amount to a waiver of the statutory requirement, relying upon what he found to be the general rule as stated in Williamson v. Williams, 262 Mich. 401, 404, 247 N.W. 704, 705 (1933). To the argument that the surety could, by contract, waive its statutory notice privilege, Judge Harvey concluded that while there may be some merit to the contention, that argument was foreclosed by People ex rel. Wheeling Corrugating Co. v. W. L. Thon Co., 307 Mich. 273, 11 N.W.2d 886 (1943), which construed the 1905 Act:
 
 
 7
 "The statute requires notice by materialmen within 60 days of the date of the furnishing of the last of (the) materials. This requirement could not be the subject of waiver by acts of the contractor and plaintiff" (materialman).
 
 
 8
 400 F.Supp. at 80, Quoting 307 Mich. at 278, 11 N.W.2d at 888.
 
 
 9
 Most of the argument before this court has concerned whether Hub was a subcontractor or whether it was, as the defendants claim, a materialman to a materialman to a subcontractor to a principal contractor, and hence without any right of recourse against Gust or Aetna on the bond. It suffices for our purposes here to observe that, in our opinion, Judge Harvey correctly applied the appropriate Michigan law to the undisputed facts of this case to hold that Hub was a subcontractor. We are not, however, as confident that this determination alone is dispositive of the issues raised by Count V. The 1963 Act, as far as we can ascertain, speaks solely in terms of "claimant", defined in Section 6 of the Act as "a person having furnished labor, material, or both, used or reasonably required for use in the performance of the contract. 'Labor and material' includes that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the contract." M.C.L.A. § 129.206, M.S.A. § 5.2321(6). Unlike the 1905 Act, under which nearly all of the cases relied upon by the parties and the district court were decided, the 1963 Act makes no express distinction between subcontractors and materialmen insofar as the right to recover upon the payment bond is concerned, except to imply that there may be no right without giving the statutory notices unless a claimant has a "direct contractual relationship with the principal contractor". M.C.L.A. § 129.207, M.S.A. § 5.2321(7).
 
 
 10
 We are, therefore, led to the conclusion that Hub, while meeting the definition of subcontractor under pre-existing Michigan law, is not under the facts here a claimant having a direct contractual relationship with Gust, the principal contractor, within the meaning of Section 7 of the 1963 Act.[5] We therefore hold that plaintiff's status as a subcontractor here places it in no more or less favorable position with regard to the duty to provide notice than any other supplier on a public works project.[6] It seems a fair construction of the legislative intent that the Michigan legislature saw no benefit to the continuation of the distinction between materialmen and subcontractors when it came to affording the statutory protection of a payment bond. We, therefore, hold that under Michigan's statute, the plaintiff would normally have been required to furnish both notices required in Section 7(a) and (b) as a condition to recover upon the bond. As pointed out by Judge Harvey and the parties, however, the express terms of the bond which was actually executed between Aetna and Gust required only the 90-day notice and we are, therefore, compelled to determine whether Hub's satisfaction of this requirement alone permits recovery or whether, as Judge Harvey held, the 30-day notice of the statute must also be met. In this respect we find unpersuasive the authorities upon which the district court relied.
 
 
 11
 In Williamson v. Williams, supra, cited by the district court, 400 F.Supp. at 79-80, the surety and the principal contractor sought to escape liability for services furnished in the execution of a public construction contract by claiming that the bond as executed restricted liability to indebtedness arising from the principal contractor. Holding that liability also extended to claims for services furnished by laborers to a remote subcontractor, the court simply held, in accordance with pre-existing law,[7] that " 'where a bond is given under the authority of a statute, that which is not expressed but should have been incorporated is included in the bond.' " 262 Mich. at 404, 247 N.W. at 705, Quoting with approval Chambers v. Cline, 60 W.Va. 588, 55 S.E. 999 (1906) (syllabus). However, the Michigan Supreme Court in Williamson, 262 Mich. at 405, 247 N.W. at 705, cited with approval the following instructive quotation from Baumann v. City of West Allis, 187 Wis. 506, 204 N.W. 907, 914 (1925):
 
 
 12
 It is the contention of appellants that the liability sought to be imposed by the statute does not arise unless the provision required by the statute is actually inserted in the contract. . . . If this be the proper construction of the law, then the statute might just as well not have been passed, because such was the law before. Such a statute will be construed in the light of the conditions and circumstances which gave rise to the law, and to effectuate the purpose which the Legislature sought to accomplish. Having discovered that purpose, the law should be construed to give effect thereto. We entertain no doubt that it was the purpose of the Legislature to afford a remedy, in the nature of an action against the surety, to all subcontractors furnishing labor or material entering into the construction of public buildings and public works mentioned in this section of the statutes. This purpose may not be defeated by the voluntary act or by the oversight of the parties in failing to insert such a provision in the contract. The law imputes such provision to the contract whether written therein or not.
 
 
 13
 We believe, therefore, that while Williamson v. Williams, supra, is authority for the more limited proposition that the statutory liability of a surety is mandatory and may not be restricted by the express language in the bond, it does not prevent a surety from assuming by contract, if it so desires, a broader liability than that contemplated by the Act. People ex rel. Wheeling Corrugating Co. v. W. L. Thon Co., supra, also relied upon by the district court, concerned an action upon a bond in which it was conceded that notice had not been given until more than 60 days after the date of the last delivery of materials, the 60-day period being that which was specifically provided by the applicable statute, 1905 Mich.Pub. Act No. 187, as amended, Supra. There the 60-day period was sought to have been waived by an agreement between the contractor and the materialman to the prejudice of the surety. It therefore comes as no surprise that the Michigan Supreme Court held that
 
 
 14
 (t)his requirement could not be the subject of waiver by acts of the contractor and plaintiff. We construe the phrase "including extension of time" as found in the condition of the bond to refer to the time of performance of the contract between the highway department and the principal contractor. The surety guarantees payment of materialmen during the period of performance. Notice of any such extension in the time of performance is waived by the surety. This has nothing to do with the requirement of notice within the 60 day period. Even if the time of performance on behalf of the principal contractor is extended, the materialmen must still give the notice within the prescribed period from the date of the last of the materials are (sic) furnished.
 
 
 15
 307 Mich. at 278-79, 11 N.W.2d at 888.
 
 
 16
 While it is altogether sensible to hold that a surety may not restrict its own liability to defeat the statutory purpose of requiring a bond and that a contractor and a materialman may not unilaterally stipulate to waive a condition of the bond to the prejudice of the surety, there seems no good reason in Michigan law or in common sense to hold that the surety itself may not provide for more generous or less restrictive coverage than the minimum required by the statute, and neither Williamson nor Thon provides the basis for such a claim. We therefore hold that the surety by its bonding contract may agree to accept a greater liability than that required under the Michigan bonding statute, although for reasons of public policy it may not contract for less. The statute specifically provides that the payment bond is solely for the benefit of the claimants,[8] and nothing suggests that the Act was intended to establish a ceiling as well as a floor upon the liability which a surety may undertake by contract. Because the bond here provided only for the 90-day notice and the trial court has correctly held that the plaintiff had complied in all respects with the conditions of the bond as written, plaintiff is entitled to recover upon it.[9] Although for somewhat different reasons than those relied upon by the court below, we therefore conclude that judgment was properly entered in favor of the plaintiff on Count V and perforce that it ought to have been entered upon Count I as well.
 
 
 17
 In a subsequent and unreported opinion, the district court awarded judgment to plaintiff upon Count II of the complaint, charging that Hub was the third-party beneficiary of the original construction contract between Gust and the school district and, derivatively, of the payment bond contract. See generally M.C.L.A. § 600.1405, M.S.A. § 27A.1405. In view of our decision to affirm the judgment on other grounds, we decline to address the propriety of the district court's ruling on Count II.
 
 
 18
 Hub, in its cross-appeal, asserts that the district court erred in failing to award it attorney fees. Neither the 1963 Michigan Public Works Bonding Act nor the third-party beneficiary statute, M.C.L.A. § 600.1405, M.S.A. § 27A.1405, makes any provision for the award of attorney fees. Hub claims first that the fees are proper by analogy to Michigan's Mechanics' Lien Act, M.C.L.A. § 570.1 Et seq., M.S.A. § 26.281 Et seq. While we do not believe the comparison is well-taken, since the statute cited expressly provides for attorney fees, M.C.L.A. § 570.12, M.S.A. § 26.292, even under the Michigan Mechanics' Lien Act the award of attorney fees is a matter for the court's discretion and it is not claimed here that the trial judge abused his discretion in failing to make the award. Assuming that he had such discretion, we do not find it abused here.
 
 
 19
 Second, Hub claims that the appellants unduly lengthened the proceedings by failing to answer interrogatories and requiring it to resort to discovery. This matter is peculiarly within the good judgment of the district court and again we cannot find that its discretion was abused.
 
 
 20
 Finally, Hub claims that it has a contractual right to recover the attorney fees by virtue of its alleged status as a third-party beneficiary of the principal contract, which provides that the school district shall not be liable for the payment of any costs or expenses of any suit by a claimant upon the bond. Even assuming this contractual provision contemplates the payment of attorney fees, we are unable to conclude that Hub was its intended beneficiary. Even if Hub is a third-party beneficiary of some portions of the contract, a question upon which we have reserved judgment above, it does not follow that Hub is entitled to "stand in the shoes" of the school district and receive the benefit of All of the provisions of the original contract. In short, Hub is not the "person for whose benefit (the attorney fees) promise is made by way of contract . . . ." M.C.L.A. § 600.1405, M.S.A. § 27A.1405.
 
 
 21
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 [1]
 The district court also entered a stipulated judgment for Hub on Count IV, which sought recovery against Bay Electric Wholesale Company. No appeal was taken from the judgment
 
 
 [2]
 Section 7 of the 1963 Act provides in part:
 A claimant not having a direct contractual relationship with the principal contractor shall not have a right of action upon the payment bond unless (a) he has within 30 days after furnishing the first of such material or performing the first of such labor, served on the principal contractor a written notice, which shall inform the principal of the nature of the materials being furnished or to be furnished, or labor being performed or to be performed and identifying the party contracting for such labor or materials and the site for the performance of such labor or the delivery of such materials, and (b) he has given written notice to the principal contractor and the governmental unit involved within 90 days from the date on which the claimant performed the last of the labor or furnished or supplied the last of the material for which the claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed.
 M.C.L.A. § 129.207, M.S.A. § 5.2321(7). See note 5 Infra.
 
 
 [3]
 The 1963 Act expressly limits the application of the 1905 Act to certain highway projects. M.C.L.A. § 129.211, M.S.A. § 5.2321(11)
 
 
 [4]
 The form of the bonding contract here appears tailored more to the Miller Act, 40 U.S.C. § 270a Et seq. (1976), establishing conditions for contractors' bonds upon the construction or repair of federal public buildings. The Miller Act, like the payment bond furnished by Aetna, requires persons lacking a contractual relationship with the prime contractor to provide a single notice to be given within 90 days from the date on which the last labor or material was supplied. 40 U.S.C. § 270b(a)
 
 
 [5]
 The district court's opinion noted, and it is not disputed, that Hub lacked a direct contractual relationship with Gust. See 400 F.Supp. at 78
 
 
 [6]
 See Charles W. Anderson Co. v. Argonaut Ins. Co., 62 Mich.App. 650, 233 N.W.2d 691, Leave to appeal denied, 395 Mich. 815 (1975) (applying the notice provisions of Section 7 to a subcontractor)
 
 
 [7]
 August v. Collins, 260 Mich. 232, 244 N.W. 458 (1932)
 
 
 [8]
 The payment bond shall be in an amount fixed by the governmental unit but not less than 25% Of the contract amount Solely for the protection of claimants, as defined in section 6 (M.C.L.A. § 129.206, M.S.A. § 5.2321(6)), supplying labor or materials to the principal contractor or his subcontractors in the prosecution of the work provided for in the contract
 M.C.L.A. § 129.203, M.S.A. § 5.2321(3) (emphasis added).
 
 
 [9]
 No effort to reform the bond has ever been made, nor is there any allegation of mistake on the part of the surety company. Presumably, as in all such agreements, the consideration or premium for the bond reflected the risk taken. Thus, Aetna may have in fact commanded a more substantial fee for assuming a larger responsibility under the bond
 A final concern in a case of this nature is the very real danger that a claimant such as Hub will be misled to its prejudice by following the obligations of the bond rather than the 1963 Act. We do not believe that the Michigan Bonding Act, passed for the benefit of persons like Hub, was intended to serve as a trap for the unwary.